**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| LAKEWOOD HEALTH SYSTEM | : | |
| AND NORTHWEST MEDICAL | : | |
| CENTER, *for themselves and on behalf of* | : | |
| *all other similarly situated class members,* | : | |
| | : | |
| Plaintiffs, | : | Civil Action No. |
| | : | |
| v. | : | JURY TRIAL DEMANDED |
| | : | |
| TRIWEST HEALTHCARE ALLIANCE | : | |
| CORP., | : | |
| | : | |
| Defendant. | : | |
| | : | |

## COMPLAINT

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Lakewood Health System and Northwest Medical Center, as Plaintiffs and "Class Representatives," for themselves and on behalf of all other similarly situated class members (collectively, the "Class," as further defined below), by and through undersigned counsel, file the following Complaint.

## PARTIES

1.      Plaintiff, Lakewood Health System, is a Minnesota nonprofit corporation, which operates a community hospital located at 49725 County Road 83, Staples, Minnesota.

2.      Plaintiff, Northwest Medical Center, is a Minnesota nonprofit corporation, which operates a community hospital located at 120 LaBree Avenue South, Thief River Falls, Minnesota.

3.      Defendant, TriWest Healthcare Alliance Corp. ("TriWest"), is a privately-held Delaware corporation with its principal place of business at 15451 North 28th Avenue, Phoenix,

Arizona.  Among other things, TriWest financially underwrites health care services provided to "CHAMPUS/TRICARE" (defined below) beneficiaries as set forth in 32 C.F.R. §199.3.

### JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C.A. § 1332(a)(1) and 28 U.S.C.A. § 1332(d)(2) because TriWest and Plaintiffs are citizens of different states, and the matter in controversy, exclusive of interest and costs, exceeds the sums specified by 28 U.S.C.A. § 1332(a)(1) and 28 U.S.C.A. § 1332(d)(2).

5.      This Court has personal jurisdiction over TriWest because TriWest is incorporated in Delaware.

6.      Venue is proper in this District pursuant to 28 U.S.C.A. § 1391(a)(1) because TriWest is subject to personal jurisdiction in Delaware.

### NATURE OF THE ACTION

7.      TriWest financially underwrites health care services that are provided to beneficiaries of "TRICARE" (defined below) in the "TRICARE West Region" (defined below). Plaintiffs and the Class members are "Non-Network Participating Hospitals" (defined below) who have provided, and continue to provide, outpatient health care services ("outpatient services") to TRICARE beneficiaries in the TRICARE West Region.  Plaintiffs and the Class members have duly submitted to TriWest claims for such outpatient services (the "Subject Claims," defined below).

8.      Under the regulations that govern TRICARE, TriWest is required to pay Non-Network Participating Hospitals (such as Plaintiffs and the Class members) the "Facility Charges" (defined below) for the outpatient services provided to TRICARE beneficiaries in the

TRICARE West Region. Accordingly, Plaintiffs and the Class members expect to be paid by TriWest, and are entitled to be paid by TriWest, the Facility Charges for the Subject Claims.

9.    However, notwithstanding this requirement, TriWest has failed to pay Plaintiffs and the Class members the Facility Charges for the Subject Claims. TriWest's failure to pay Plaintiffs and the Class members the Facility Charges for the Subject Claims, which has resulted in the underpayment of Plaintiffs and the Class members for services rendered to TRICARE beneficiaries, is improper under the TRICARE regulations and has given rise to the claims of Plaintiffs and the Class members for breach of contract implied-in-fact and unjust enrichment set forth herein. The amount of this underpayment to Plaintiffs and the Class members is believed to be in excess of $100 million.

## BACKGROUND

### *The Creation of CHAMPUS.*

10.    In 1967, the U.S. Department of Defense ("DoD") established a health care program known as the Civilian Health and Medical Program of the Uniformed Services ("CHAMPUS"). The beneficiaries of CHAMPUS are set forth in 32 C.F.R. §199.3, and include retired armed forces members and their dependents.

11.    As originally implemented, CHAMPUS was administered by the Secretary of Defense, who used claims processors, called "fiscal intermediaries," to process the claims for the health care services provided to CHAMPUS beneficiaries.

12.    On information and belief, the contracts between the DoD and the fiscal intermediaries included a so-called "indemnification provision" whereby it was expressly provided that in any civil lawsuit arising out of the disbursement of funds under CHAMPUS, the United States and not the fiscal intermediary was the real party-in-interest. Consequently, the

3

fiscal intermediaries were not ultimately legally responsible for certain claims that arose out of the discharge of their duties under their contracts with the DoD.

***The Creation of TRICARE.***

13.    A transformation of CHAMPUS occurred in 1995 when the DoD established the TRICARE program, which is a managed health care program that covers the same group of beneficiaries that were originally covered by CHAMPUS.    CHAMPUS and the TRICARE Program are referred to collectively herein as "TRICARE."    TRICARE, which is in existence today, has always been administered through TRICARE Management Activity ("TMA") (previously known as the Office of CHAMPUS).

14.    On information and belief, rather than using the prior CHAMPUS "fiscal intermediaries" to process the claims of beneficiaries, under TRICARE, managed care support contractors (each an "MCSC") are chosen by the DoD and TMA, through a competitive bidding and selection process, to financially underwrite the delivery of health care services to TRICARE beneficiaries, all pursuant to the regulations governing TRICARE.    Defendant TriWest is such an MCSC.

15.    On information and belief, since the inception of TRICARE, and at all times relevant to this complaint, the contracts between the MCSCs and the DoD have not included an "indemnification provision" similar to the indemnification provision that was included in the prior contracts with the "fiscal intermediaries" under CHAMPUS.    Accordingly, on information and belief, unlike the "fiscal intermediaries" who previously processed claims under CHAMPUS, the MCSCs, like Defendant TriWest, are the real parties-in-interest and are themselves financially responsible and legally liable for the payment of claims arising out of the discharge of their duties under such contracts.

4

*TriWest's Participation In TRICARE.*

16.    On information and belief, when TRICARE was first implemented, in or about January 23, 1996 (effective November 28, 1995), the DoD entered into contracts (the "Prime Contracts") with seven MCSCs, including TriWest, who provided health care services for the then CHAMPUS beneficiaries in twelve TRICARE regions across the United States.

17.    On information and belief, TriWest entered into one Prime Contract on or about June 1996, which covered two of the twelve TRICARE regions:  Region 7, which included Nevada, Arizona, New Mexico, and the southwestern corner of Texas (including El Paso); and Region 8, which included Colorado, Utah, Wyoming, Montana, North Dakota, South Dakota, Nebraska, Kansas, Minnesota, Iowa, Missouri, and Idaho (excluding the counties of Benewah, Bonner, Boundary, Kootenai, Latah, and Shoshone).

18.    On information and belief, the Prime Contracts that TriWest entered into were based on a fixed price with monthly payments to TriWest.  On information and belief, the Prime Contracts required TriWest to financially underwrite the cost of the health care services provided to TRICARE beneficiaries in TriWest's TRICARE regions.

19.    On information and belief, on August 1, 2002, DoD and TMA issued a Solicitation, Offer and Award in connection with a plan to consolidate the twelve TRICARE regions into three TRICARE regions and to reduce the number of MCSCs servicing the TRICARE regions from seven to three.

20.    On information and belief, TriWest responded to this request for proposal and, on August 21, 2003, was awarded a contract for TRICARE's new West Region  (the "West Region Contract"), which was and is comprised of the following states:  Alaska, Arizona, California, Colorado, Hawaii, Idaho, Iowa, Kansas, Minnesota, Missouri (excluding St. Louis), Montana,

Nebraska, Nevada, New Mexico, North Dakota, Oregon, South Dakota, Texas (El Paso area only), Utah, Washington, and Wyoming.

21.    On information and belief, the West Region Contract provides, as did the Prime Contracts, for a fixed payment, which has a cumulative value of approximately $10 billion for the base year and five one-year option periods. This amount includes the target health care costs for the second through fifth option periods, which were to be negotiated prior to exercising each option. On information and belief, TriWest began providing health care services to TRICARE beneficiaries pursuant to the West Region Contract shortly after it was awarded, and TriWest continues to do so today.

22.    On information and belief, like the Prime Contracts, TriWest's West Region Contract does not include an "indemnification provision," as had been included in the prior contracts with the fiscal intermediaries under CHAMPUS, and thus TriWest is the financially responsible party and the real party-in-interest.

*TriWest's Provider Networks and TriWest's Payment for Services.*

23.    On information and belief, under both the Prime Contracts and the West Region Contract, TriWest was and is responsible for establishing civilian provider networks in the TRICARE region or regions for which it was and is responsible. A "Provider" is an entity or person that provides health care, such as institutional providers, which include hospitals (such as Plaintiffs and the Class members), and non-institutional providers, which include physicians.

24.    In addition, much like other commercial insurers who offer managed health care programs, TriWest was and is responsible for a variety of functions, including: operating TRICARE service centers; providing customer service to TRICARE beneficiaries enrolled in TRICARE; providing administrative support, such as enrollment, disenrollment, and claims

processing; and communicating and distributing educational information to beneficiaries and providers.

25.    Providers who enter into contracts with TriWest, in order to participate in its TRICARE provider network, negotiate with TriWest to determine the rates at which they will be reimbursed by TriWest for health care services rendered to TRICARE beneficiaries in TriWest's region. Providers who have entered into contracts with an MCSC (such as TriWest) are referred to as "Network Providers."

26.    On the other hand, Providers who do not enter into such written contracts with an MCSC (such as TriWest) are called "Non-Network Providers." Non-Network Providers, which can include hospitals, are either required or have the option of accepting assignment of benefits from TRICARE beneficiaries. Those Non-Network Providers that accept such assignment of benefits are referred to as "Non-Network Participating Providers." Hospitals that are Non-Network Participating Providers are referred to as "Non-Network Participating Hospitals."

27.    Unlike Network Providers, Non-Network Participating Hospitals do not *negotiate* the rates at which they will be reimbursed by the MCSCs (such as TriWest) for the health care services rendered to TRICARE beneficiaries. Instead, the MCSCs are required to reimburse Non-Network Participating Hospitals for the provision of health care services to TRICARE beneficiaries strictly in accordance with the regulations that govern TRICARE. Plaintiffs and the Class members are all Non-Network Participating Hospitals.

### *Payment to Non-Network Participating Hospitals for Outpatient Services.*

28.    On October 24, 2005, a new TRICARE rule was published in the Federal Register at 70 FR 61371. This rule, which was made retroactive to August 1, 2003, amended 32 C.F.R. § 199.14 to add additional categories to subsection (a)(5) of that C.F.R., which subsection prescribes the payment for hospital outpatient services.

29. Included in subsection section (a)(5) is item (xi), entitled "facility charges". Specifically, subsection (xi) states as follows:

> (xi) *Facility charges*. TRICARE payments for hospital outpatient facility charges that would include the overhead costs of providing the outpatient service would be **paid as billed**. For the definition of facility charge, see § 199.2(b). (emphasis added).

30. 32 C.F.R. § 199.2(b) states: "The term 'facility charge' means the charge, either inpatient or outpatient, made by a hospital or other institutional provider to cover the overhead costs of providing the service. These costs would include building costs, *i.e.* depreciation and interest; staffing costs; drugs and supplies; and overhead costs, *i.e.*, utilities, housekeeping, maintenance, etc." (hereinafter referred to as "Facility Charges").

31. Consistent with the TRICARE regulations, in a letter dated April 14, 2006 to Health Net Federal Services, LLC, f/k/a Health Net Federal Services, Inc. ("HNFS"), the MCSC that underwrites health care services that are provided to TRICARE beneficiaries in the "TRICARE North Region,"[1] the Office of the Assistant Secretary of Defense, Health Affairs, reiterated TMA's and DoD's longstanding policy that hospitals are to be reimbursed the full charges actually billed by them for the Facility Charges related to the outpatient services provided to TRICARE beneficiaries. A true and correct copy of the DoD's letter of April 14, 2006 is attached hereto as Exhibit "A." On information and belief, TriWest became aware of the contents of the DoD's letter of April 14, 2006 shortly after it was written. The policy reiterated in the DoD's letter of April 14, 2006 is applicable to all three MCSCs, including TriWest.

---

[1] The TRICARE North Region is comprised of the following states: Connecticut, Delaware, the District of Columbia, Illinois, Indiana, Kentucky, Maine, Maryland, Massachusetts, Michigan, New Hampshire, New Jersey, New York, North Carolina, Ohio, Pennsylvania, Rhode Island, Vermont, Virginia, West Virginia, Wisconsin, and small portions of Tennessee, Missouri, and Iowa.

32.    The TRICARE regulations dictate the manner in which a Non-Network Participating Hospital submits a claim to TriWest for outpatient services. The Class Representatives, and all the members of the Class, have duly billed their claims for outpatient services in the manner required by the applicable regulations.

33.    However, contrary to (i) the regulations governing TRICARE, (ii) TMA's longstanding policy, and (iii) the DoD's letter of April 14, 2006 directly addressing this issue, TriWest has instead arbitrarily declined to pay the Facility Charges for outpatient services provided by Non-Network Participating Hospitals as prescribed by 32 C.F.R. § 199.14(a)(5)(xi).

34.    TriWest's failure to pay Non-Network Participating Hospitals their Facility Charges is improper under the TRICARE regulations and, as set forth herein, results in an improper underpayment to Non-Network Participating Hospitals, including Plaintiffs and the members of the Class herein, for services rendered by them to TRICARE beneficiaries, and unjust enrichment of TriWest. Plaintiffs and the Class members, to their detriment, have been, and continue to be, underpaid for the outpatient services they have provided, and continue to provide, to TRICARE beneficiaries in TriWest's TRICARE region.

35.    Plaintiffs and the members of the Class are all hospitals who have provided outpatient services to TRICARE beneficiaries, and have duly submitted claims for outpatient services to TriWest that accrued at a time when the Plaintiffs and each Class member was a Non-Network Participating Hospital. Such claims are hereinafter referred to as the "Subject Claims."

36.    Consistent with (i) the regulations governing TRICARE, (ii) TMA's longstanding policy, and (iii) the DoD's letter of April 14, 2006 directly addressing this issue, in rendering the outpatient services underlying the Subject Claims, Plaintiffs and the Class members, all of whom

are or were Non-Network Participating Hospitals, reasonably expected to be reimbursed their Facility Charges for the Subject Claims at the full amounts billed.

37.    TriWest's failure to pay the Facility Charges for the Subject Claims, despite (i) the regulations governing TRICARE, (ii) TMA's longstanding policy, and (iii) the DoD's letter of April 14, 2006 directly addressing this issue, is not appealable under the regulations governing TRICARE.

38.    Nevertheless, Plaintiffs and their counsel have attempted, unsuccessfully, through numerous discussions and correspondence with TriWest, to cause TriWest to pay the Facility Charges for the Subject Claims.  Throughout this dialogue, TriWest has been steadfast in its unwillingness to make such payment.  Accordingly, the claims of the Plaintiffs and the Class members alleged herein are ripe for adjudication, as further efforts by Plaintiffs or any Class member to resolve this dispute without litigation would be futile.

## CLASS ALLEGATIONS

39.    The Class shall be described as any hospital who:

    (a)    duly submitted to TriWest a Subject Claim for outpatient services provided to a TRICARE beneficiary since August 1, 2003;

    (b)    which Subject Claim accrued at a time when the hospital was a Non-Network Participating Hospital; and

    (c)    which Subject Claim for Facility Charges was not paid in the manner prescribed by 32 C.F.R. § 199.14(a)(5)(xi).

40.    The Class is comprised of hundreds of hospitals who have duly submitted Subject Claims to TriWest.  As a result, the members of the Class are so numerous and geographically dispersed that joinder of them for purposes of individual lawsuits is impracticable and not feasible.

41.     Common questions of law and fact predominate among the Class members. Specifically, whether TriWest breached its (i) implied contractual and (ii) quasi-contractual obligations in failing to reimburse the Class members the Facility Charges for Subject Claims, and whether TriWest was unjustly enriched thereby.

42.     The Class Representatives are Non-Network Participating Hospitals who have duly submitted Subject Claims to TriWest. The claims of the Class Representatives are typical of the claims of all of the Class members because the Class Representatives and the other Class members have been damaged by the wrongful conduct of TriWest in the same material fashion, which is TriWest's failure to pay the Facility Charges for the Subject Claims.

43.     The Class Representatives will fairly and adequately protect the interests of the Class because the interests of the Class Representatives coincide with those of the other Class members, *i.e.*, being made whole for TriWest's improper underpayment of the Subject Claims, and the Class Representatives' interests are not antagonistic to those of any absent Class members. In addition, the Class Representatives are represented by counsel who are experienced in the prosecution of these types of claims and in complex litigation.

44.     Class treatment is superior to any alternatives for the fair and efficient adjudication of the controversy alleged herein. Class treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, and to do so efficiently, and without the duplication of effort and expense that numerous individual actions would entail.

45.     There are no difficulties likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy. TriWest has acted, or refused to act, on

grounds which are generally applicable to the members of the Class, making final relief with respect to the Class appropriate.

46.     Adjudications before this Court with respect to individual members of the Class, as opposed to on a class basis, would, as a practical matter, be dispositive of the interests of the other members of the Class who are not named parties to the action or could substantially impair or impede their ability to protect their interests.

47.     The prosecutions of separate actions by individual members of the Class, as opposed to on a class basis, would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for both the Class members and TriWest.  Such incompatible standards, inconsistent or varying adjudications on what, of necessity, would be the same essential facts, proof and legal theories, would create and allow to exist, unnecessarily, inconsistent and incompatible rights within the Class.

48.     The failure to permit this case to proceed as a class action, would be contrary to the public policy of judicial economy in avoiding a multiplicity of similar actions.

49.     The expense and burden of individual litigation, as opposed to on a class basis, would make it difficult for the members of the Class effectively to seek redress individually for TriWest's wrongful conduct.

50.     The named Class Representatives are prepared to and will serve the proposed Class in a representative capacity with all of the obligations and duties attendant thereto.

## COUNT I

## BREACH OF CONTRACT IMPLIED-IN-FACT

51.     Plaintiffs incorporate herein by reference the allegations set forth in paragraphs 1 through 50 above as if fully set forth herein.

52.     Based on the conduct of the parties, there existed a contract implied-in-fact that claims submitted by Plaintiffs and by Class members would be paid by TriWest pursuant to and consistent with: (i) the regulations governing TRICARE, (ii) TMA's longstanding policy, and (iii) the DoD's letter of April 14, 2006 directly addressing this issue; specifically, that Facility Charges duly submitted would be paid by TriWest in full as billed.

53.     Plaintiffs and Class members rendered the outpatient services underlying the Subject Claims, and duly submitted the Subject Claims to TriWest for payment, reasonably relying upon and expecting to be reimbursed by TriWest, pursuant to (i) the regulations governing TRICARE, (ii) TMA's longstanding policy, and (iii) the DoD's letter of April 14, 2006 directly addressing this issue, for the Facility Charges for the Subject Claims as billed.

54.     However, TriWest has failed, and continues to fail, to pay the Facility Charges for the Subject Claims.  In so acting, TriWest breached a contract implied-in-fact in respect of which the Plaintiffs and each Class member has suffered damages.

55.     Plaintiffs and the Class members are entitled to be paid by TriWest the Facility Charges for the Subject Claims, and TriWest's failure to so reimburse the Plaintiffs and the Class members constitutes a breach of contract implied-in-fact that has damaged Plaintiffs and the Class members in an amount to be determined at trial, but which is, at a minimum, in the aggregate, in an amount in excess of $100 million.

## COUNT II

### BREACH OF QUASI-CONTRACT/UNJUST ENRICHMENT

56.     Plaintiffs incorporate herein by reference the allegations set forth in paragraphs 1 through 55 above as if fully set forth herein.

57.     Plaintiffs and members of the Class have duly submitted to TriWest Subject Claims.

58.     TriWest benefited from the outpatient services rendered by Plaintiffs and the Class members that resulted in and are reflected by the Subject Claims.

59.     However, TriWest failed to pay, and continues to fail to pay the Facility Charges for the Subject Claims.  Consequently, Plaintiffs and the Class members have been, and will continue to be, underpaid, to their detriment, for the outpatient services they have provided, and continue to provide, to TRICARE beneficiaries.

60.     The benefit conferred upon TriWest from such improper underpayment of the Subject Claims is unjust, constitutes an unjust enrichment, and has damaged Plaintiffs and the Class members and has unjustly enriched TriWest in an amount to be determined at trial, but which is, at a minimum, in the aggregate, in an amount in excess of $100 million.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs and Class Representatives, for themselves and on behalf of all other similarly situated class members, pray for the following judgment and relief against TriWest as follows:

1.    For restitution, compensatory, general, special, statutory, and other damages, in an amount to be determined according to the proofs presented during the course of trial, plus statutory interest.

2.    For costs and attorneys' fees.

3.    For such other relief as the Court deems necessary, just and appropriate under the circumstances.

Dated: February 7, 2007                                   DUANE MORRIS LLP

Kathaleen S. McConnell (4579)
Matt Neiderman (Del. Bar No. 4018)
1100 N. Market St., Suite 1200
Wilmington, Delaware 19801
302.657.4900
302.657.4901 *fax*
mneiderman@duanemorris.com

John J. Soroko
Seth A. Goldberg
DUANE MORRIS LLP
30 South 17th St.
Philadelphia, PA 19103
215.979.1000
215.979.1020 *fax*
jsoroko@duanemorris.com
sgoldberg@duanemorris.com

Michael R. Gottfried
Patricia R. Rich
DUANE MORRIS LLP
470 Atlantic Avenue
Boston, MA 02210
617.289.9200
617.289.9201 *fax*
mgottfried@duanemorris.com
prich@duanemorris.com

Gregory A. Brodek
DUANE MORRIS LLP
88 Hammond Street, Suite 500
Bangor, ME 04401
207-262-5400
gbrodek@duanemorris.com

*Attorneys for Plaintiffs Lakewood Health
System and Northwest Medical Center, for
themselves and on behalf of all other
similarly situated class members*

DM1\749376.1

# EXHIBIT

# "A"



**OFFICE OF THE ASSISTANT SECRETARY OF DEFENSE**
**HEALTH AFFAIRS**
**16401 EAST CENTRETECH PARKWAY**
**AURORA, COLORADO 80011-9066**

TRICARE
MANAGEMENT ACTIVITY

06-CMA-003054                                               April 14, 2006

Mr. Charles Rose
Vice President, Assistant General Counsel
Health Net Federal Services (HNFS)
2025 Aerojet Road
Rancho Cordova, CA 95742

Subject:  Contract MDA 906-03-C-0011, Reimbursement of Critical Access Hospital (CAH)
          Inpatient Services and Sole Community Hospitals (SCH) Outpatient Services

Reference:  HNFS Letter, same subject, dated October 18, 2005

Dear Mr. Rose:

        In response to the referenced letter, a thorough research of TRICARE Systems Manual
was conducted and findings coordinated and staffed between TMA Office of General Counsel,
Medical Benefits & Reimbursement Systems (MB&RS) Office and Contracting Management.
Below are the results to the research with applicable manual references:

<u>SCHs – inpatient services</u>

        For inpatient services, SCHs are exempt from the DRG (Diagnostic
Related Groups) - based payment system and are reimbursed billed charges.  Reference
32 C.F.R. 199.14(a)(1)(ii)(D)(6) and the TRICARE Reimbursement Manual (TRM),
Chapter 6, Section 4, Paragraph III.G.6.  (SCHs may, of course, be network providers in
which case their reimbursement would be subject to the terms of their network
agreement.)

<u>SCHs – outpatient services</u>

        For outpatient services, SCHs are reimbursed based on the allowable charge when
the claim has sufficient Healthcare Common Procedure Coding System (HCPCS) coding
information, as stated in the TRM, Chapter 1, Section 24.  Other services without
allowable charges, such as facility charges, are reimbursed based on billed charges.

<u>CAHs – inpatient services</u>

        For inpatient services, CAHs are subject to the TRICARE DRGs - based payment
system, as CAHs are not one of the category of providers specifically listed as being

Page 1 of 3

exempt in the Regulation. The TRM Chapter 6, Section 4, paragraph G. follows the Regulation.

CAHs – outpatient services

For outpatient services, CAHs are reimbursed based on the allowable charge when the claim has sufficient HCPCS coding information. Reference TRM, Chapter 1, Section 24. Other services without allowable charges, such as facility charges, are reimbursed based on billed charges.

Hospital Outpatient Billings – general policy

On March 10, 2000, the Agency issued Policy Manual, Chapter 13, Section 6.9, Hospital Reimbursement – Outpatient Services. (This provision is now found in the TRICARE Reimbursement Manual, Chapter 1, Section 24.) The March 10, 2000, Policy Manual Section 6.9 provided, in relevant part, that:

"Since there is not a payment reimbursement system developed for outpatient services, billed charges are used in the payment of such services." The Policy Manual included the following exception: "When the claim has sufficient HCPCS (Levels – I, II, III) coding information, services are to be processed using existing allowable charges." The Policy Manual provided examples for "services [that] could include professional services that have CMAC [CHAMPUS Maximum Allowable Charge] pricing...." Other examples having allowable charges (but not CMACs) were for ambulance services, durable medical equipment and supplies, oxygen and related supplies, IVs and injectable drugs, and anesthesia services. Professional services have been subject to CMAC, since CMACs were implemented in 1992. Prior to 1992, there were allowable charges based on percentiles. There have been clarifications to the Regulation that have resulted in updates to this Section. The TRM, Chapter 1, Section 24, Paragraph III.C. provides that "When sufficient coding information is provided, outpatient hospital services including emergency services, clinical laboratory services, rehabilitation therapy, venipuncture, and radiology services are paid using existing allowable charges. Such services are reimbursed under the allowable charge methodology that would also include the CMAC rates."

The March 10, 2000, Policy Manual issuance was the Agency's formal statement of its interpretation. It was not a new interpretation. These reimbursement requirements apply to all hospital outpatient billings, unless there is an exemption. Regarding SCHs and CAHs and the outpatient hospital services they provide, the Regulation does not give an exemption.

If we can be of further assistance, please contact the undersigned at 303-676-3894.

Sincerely,

Laura L. Sells
Contracting Officer

cc:
Edward Koenig, III, TRO-N
Capt. Paul Garst, TRO-N
Dave Blocker, TRO-N
Col. David Adams, TRO-N Aurora
Christine Van Cleave, TRO-N Aurora
Steve Hellman, TRO-N Aurora
Gerald Wesley, TMA/OGC
Reta Michak, TMA/MB&RS
Stanley Regensberg, TMA/MB&RS
Steve Westbrook, Health Net
Janice Cota, Health Net

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| LAKEWOOD HEALTH SYSTEM AND NORTHWEST MEDICAL CENTER,. | TRIWEST HEALTHCARE ALLIANCE CORP., |

| (b) County of Residence of First Listed Plaintiff **Todd County, Minnesota** | County of Residence of First Listed Defendant **Maricopa, Arizona** |
|---|---|
| (EXCEPT IN U.S. PLAINTIFF CASES) | (IN U.S. PLAINTIFF CASES ONLY) |
| | NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED. |

| (c) Attorney's (Firm Name, Address, and Telephone Number) | Attorneys (If Known) |
|---|---|
| SEE ATTACHMENT | |

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff

☐ 2 U.S. Government Defendant

☐ 3 Federal Question (U.S. Government Not a Party)

☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

### CONTRACT
☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
☐ 153 Recovery of Overpayment of Veteran's Benefits
☐ 160 Stockholders' Suits
☒ 190 Other Contract
☐ 195 Contract Product Liability
☐ 196 Franchise
☐

### TORTS

**PERSONAL INJURY**
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers' Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury

**PERSONAL INJURY**
☐ 362 Personal Injury- Med. Malpractice
☐ 365 Personal Injury- Product Liability
☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

### FORFEITURE/PENALTY
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 R.R. & Truck
☐ 650 Airline Regs.
☐ 660 Occupational Safety/Health
☐ 690 Other

### BANKRUPTCY
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

### PROPERTY RIGHTS
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

### LABOR
☐ 710 Fair Labor Standards Act
☐ 720 Labor/Mgmt. Relations
☐ 730 Labor/Mgmt. Reporting & Disclosure Act
☐ 740 Railway Labor Act
☐ 790 Other Labor Litigation
☐ 791 Empl. Ret. Inc. Security Act

### SOCIAL SECURITY
☐ 861 HIA (1395 ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

### FEDERAL TAX SUITS
☐ 870 Taxes (U.S. Plaintiff or Defendant)
☐ 871 IRS—Third Party 26 USC 7609

### OTHER STATUTES
☐ 400 State Reapportionment
☐ 410 Antitrust
☐ 430 Banks and Banking
☐ 450 Commerce
☐ 460 Deportation
☐ 470 Racketeer Influenced and Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Sat TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 890 Other Statutory Actions
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 895 Freedom of Information Act
☐ 900 Appeal of Fee Determination Under Equal Access to Justice Act
☐ 950 Constitutionality of State Statutes

### REAL PROPERTY
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

### CIVIL RIGHTS
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/ Accommodations
☐ 444 Welfare
☐ 445 Amer. w/ Disabilities Employment
☐ 446 Amer. w/ Disabilities Other
☐ 440 Other Civil Rights

### PRISONER PETITIONS
☐ 510 Motions to Vacate Sentence

**Habeas Corpus:**
☐ 530 General
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Conditions

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original Proceeding

☐ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from another district (specify)

☐ 6 Multidistrict Litigation

☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
(Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. (Do not cite jurisdictional statutes unless diversity.)

28 USC §1332, 28 USC §1391

Brief description of cause: Unjust enrichment

## VII. REQUESTED IN COMPLAINT:
☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $  $100 million

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See Instructions):

Northern Michigan Hospitals, Inc. v. Health Net Federal Services, Inc.

JUDGE _____

DOCKET NUMBER  07-39

DATE February 7, 2007

SIGNATURE OF ATTORNEY OF RECORD: Matt Neiderman, Esq., Duane Morris LLP (Del. I.D. No. 4018)

*Kathalean S McCormic (Del. ID 4579) for Matt Neiderman*

### FOR OFFICE USE ONLY

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

## Attachment to Civil Cover Sheet

**I(c). Plaintiffs' Attorneys**

Matt Neiderman
DUANE MORRIS LLP
1100 N. Market St., Suite 1200
Wilmington, Delaware 19801
302.657.4900
302.657.4901 *fax*
mneiderman@duanemorris.com

Gregory A. Brodek
DUANE MORRIS LLP
88 Hammond Street, Suite 500
Bangor, ME 04401
207-262-5400
gbrodek@duanemorris.com

John J. Soroko
Seth A. Goldberg
DUANE MORRIS LLP
30 South 17th St.
Philadelphia, PA 19103
215.979.1000
215.979.1020 *fax*
jsoroko@duanemorris.com
sgoldberg@duanemorris.com

Michael R. Gottfried
Patricia R. Rich
DUANE MORRIS LLP
470 Atlantic Avenue
Boston, MA 02210
617.289.9200
617.289.9201 *fax*
mgottfried@duanemorris.com
prich@duanemorris.com

AO FORM 85 RECEIPT (REV. 9/04)

United States District Court for the District of Delaware

Civil Action No. _____ 0 7 – 0 9



# ACKNOWLEDGMENT
# OF RECEIPT FOR AO FORM 85

## *NOTICE OF AVAILABILITY OF A*
## *UNITED STATES MAGISTRATE JUDGE*
## *TO EXERCISE JURISDICTION*

I HEREBY ACKNOWLEDGE RECEIPT OF _____ COPIES OF AO FORM 85.

FEB 0 7 2007

(Date forms issued)

(Signature of Party or their Representative)

Mike Bobish

(Printed name of Party or their Representative)

Note: Completed receipt will be filed in the Civil Action