## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LAKEWOOD HEALTH SYSTEM AND NORTHWEST MEDICAL CENTER, ) ) ) ) | |
| Plaintiffs, ) | Civil Action No. 07-69 - GMS |
| v. ) | |
| TRIWEST HEALTHCARE ALLIANCE CORP., ) ) | |
| Defendant. ) | |

## TRIWEST HEALTHCARE ALLIANCE CORP.'S
## REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS

OF COUNSEL
Robert S. Ryland
Robert R. Gasaway
Ashley C. Parrish
Scott M. Abeles
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W., Suite 1200
Washington, D.C. 20005
Telephone: (202) 879-5100
Facsimile: (202) 879-5200

Lewis H. Lazarus (#2374)
Matthew F. Lintner (#4371)
Katherine J. Neikirk (#4129)
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, Delaware 19801-1494
Telephone: (302 ) 888-6800
Facsimile: (302) 571-1750
llazarus@morrisjames.com
mlintner@morrisjames.com
kneikirk@morrisjames.com

*Attorneys for Defendant*
*TriWest Healthcare Alliance Corp.*

Dated: April 13, 2007

## TABLE OF CONTENTS

INTRODUCTION ....................................................................................................................1

ARGUMENT.........................................................................................................................2

I.   Plaintiffs' Interpretation Of The CHAMPUS Regulations Reinforces The
     Need To Consult TMA Before Addressing This Case On Its Merits. ....................2

     A.   Plaintiffs' Theory Turns On A Far-Fetched Interpretation Of The
          Federal Regulations. .................................................................................3

     B.   TMA, The Party With The Most At Stake, Deserves The
          Opportunity To Be Heard On The Meaning Of Its Own
          Regulations. ..............................................................................................5

II.  Plaintiffs' Responses To The Motion To Dismiss Are Not Convincing. ...............8

     A.   Plaintiffs Have Filed The Wrong Claims, Against the Wrong Party,
          In The Wrong Forum. ................................................................................8

          1.   Plaintiffs' Claims Are Expressly Preempted. ..................................8

          2.   Plaintiffs Have Not Sued The Real Party in Interest. ....................11

          3.   The Government Is A Necessary And Indispensable Party...........12

          4.   Without the Government, Plaintiffs Lack Standing.......................14

          5.   TMA Has Primary Jurisdiction.....................................................15

     B.   Plaintiffs Have Failed To Exhaust Their Administrative Remedies..........16

     C.   Plaintiffs Failed To State Claims On Which Relief Can Be
          Granted....................................................................................................18

          1.   Plaintiffs Fail To State A Claim For Breach Of Contract.............18

          2.   The Complaint Fails To State A Claim For Unjust
               Enrichment. ..................................................................................19

CONCLUSION....................................................................................................................20

i

## TABLE OF AUTHORITIES

**Cases**

*Angst v. Royal Maccabees Life Ins. Co.,*
    77 F.3d 701 (3d Cir. 1996).................................................................................. 14

*Baptist Physician Hospital Org., Inc. v. Humana Military
Healthcare Servs., Inc.,*
    368 F.3d 894 (6th Cir. 2004) ......................................................................... 10, 11

*Board of Trustees of Bay Med. Ctr. v. Humana Military
Healthcare Servs., Inc.,*
    447 F.3d 1370 (Fed. Cir. 2006)...................................................................... 10, 11

*Bowles v. Seminole Rock & Sand Co.,*
    325 U.S. 410 (1945)............................................................................................. 7

*Brittel v. United States,*
    372 F.3d 1370 (Fed. Cir. 2004)......................................................................... 13

*Bynum v. Aetna Gov't Health Plan,*
    907 F. Supp. 320 (S.D. Cal. 1995)..................................................................... 10

*Clark Oil, Inc. v. Texaco,*
    609 F. Supp. 1373 (D. Del. 1985)................................................................. 15, 16

*Dugan v. Rannk,*
    372 U.S. 609 (1963)........................................................................................... 11

*Early v. United States Life Ins. Co.,*
    Civ. No. 05-4696 (3d Cir. Mar. 22, 2007) ........................................................... 9

*Empire Healthchoice Assurance, Inc. v. McVeigh,*
    126 S. Ct. 2121 (2006).......................................................................................10

*Far East Conference v. United States,*
    342 U.S. 570 (1952)........................................................................................... 15

*FMC Corp. v. Holliday,*
    498 U.S. 52 (1990).............................................................................................. 9

*Gardiner v. Virgin Islands Water & Power Auth.,*
    145 F.3d 635 (3d Cir. 1998)............................................................................... 14

*Green Hosp. v. United States,*
    23 Cl. Ct. 393 (1991) ......................................................................................... 14

*Hayes v. Prudential Ins. Co. of America,*
    819 F.2d 921 (9th Cir. 1987) .................................................................................. 9

*Horn v. Thoratec Corp.,*
    376 F.3d 163 (3d Cir. 2004)................................................................................. 8

*Housing Auth. of City of Jersey City v. Jackson,*
    749 F. Supp. 622 (D.N.J. 1990) ......................................................................... 14

*Laveson v. Trans World Airlines,*
    471 F.2d 76 (3d Cir. 1972)................................................................................. 16

*MCI Commc'n Corp. v. American Tel. & Tel. Co.,*
    496 F.2d 214 (3d Cir. 1974)............................................................................... 16

*McLean Hosp. Corp. v. United States,*
    26 Cl. Ct. 1144 (1992) ...................................................................................... 14

*Medtronic, Inc. v. Lohr,*
    518 U.S. 470 (1996)........................................................................................... 9

*Merkle v. Health Options, Inc.,*
    940 So.2d 1190 (Fl. Dist. Ct. App. 2006) .......................................................... 20

*Metrophones Telecomm., Inc. v. Global Crossing Telecomm., Inc.,*
    423 F.3d 1056 (9th Cir. 2005) ................................................................. 18, 19, 20

*Michael Reese Hosp. and Med. Ctr. v. Chi HMO, Ltd.,*
    554 N.E.2d 472 (Ill. App. Ct. 1990) .................................................................. 20

*Murray v. Northrop Grumman Info. Tech.,*
    444 F.3d 169 (2d Cir. 2006)............................................................................... 19

*Oh v. AT&T Corp.,*
    76 F. Supp. 2d 551 (D.N.J. 1999) ...................................................................... 16

*Pennhurst State Sch. & Hosp. v. Halderman,*
    465 U.S. 89 (1984)............................................................................................ 11

*Pilot Life Ins. Co. v. Dedeaux,*
    481 U.S. 41 (1987)............................................................................................. 8

*Precision Pay Phones v. Qwest Commc'n Corp.,*
    210 F. Supp. 2d 1106 (N.D. Cal. 2002) ............................................................. 20

*Pryzbowski v. U.S. Healthcare, Inc.,*
    245 F.3d 266 (3d Cir. 2001)................................................................................. 9

*Richman Bros. Records, Inc. v. U.S. Sprint Commc'n Co.*,
    953 F.2d 1431 (3d Cir.1991)................................................................... 16

*Sellers v. Brown*,
    633 F.2d 106 (8th Cir. 1980) ............................................................... 14

*Steel Co. v. Citizens for A Better Env't*,
    523 U.S. 83 (1998).................................................................................. 5

*Tassy v. Brunswick Hosp. Ctr.*,
    296 F.3d 65 (2d Cir. 2002)................................................................... 15

*Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko*,
    540 U.S. 398 (2004)............................................................................. 17

*Wolf v. Reliance Standard Life Ins. Co.*,
    71 F.3d 444 (1st Cir. 1995).................................................................. 10

**Other Authorities**

10 U.S.C. § 1079....................................................................................... 4

10 U.S.C. § 1103.................................................................................... 8, 9

28 U.S.C. § 1346..................................................................................... 13

28 U.S.C. § 1491..................................................................................... 13

32 C.F.R. § 199.10.................................................................................. 17

32 C.F.R. § 199.14................................................................................ 1, 3

32 C.F.R. § 199.17.............................................................................. 8, 10

5 U.S.C. § 706......................................................................................... 18

70 Fed. Reg. 61368.................................................................................... 4

70 Fed. Reg. 61371-72............................................................................... 4

**Treatises**

Website of Duane Morris LLP,
    http://www.duanemorris.com/news/static/affinq081405.pdf) ............................... 12

Wright, Charles Alan & Miller, Arthur R.,
    *Federal Practice and Procedure* § 1357 (2d ed. 1997)........................................ 15

## INTRODUCTION[1]

Plaintiffs' answering brief makes clear that their case pivots on an implausible (albeit lucrative for them) interpretation of the CHAMPUS regulations promulgated and administered by TMA. Plaintiffs acknowledge TMA has established fixed charges, by regulation, for various categories of "hospital outpatient services." Pl. Br. 8; *see* 32 C.F.R. § 199.14(a)(5). But they contend that buried in the twelve-item regulatory list of fixed charges for defined and mutually exclusive categories of "hospital outpatient services" lies a golden egg that may be invoked by hospitals at will for their own benefit.

According to plaintiffs, item eleven in CHAMPUS's list of twelve reimbursement categories — "facility charges" — is not to be applied in lieu of, but in addition to, every other item on the twelve-item list. Better yet, plaintiffs say, "facility charges" are not limited to fixed amounts, but are to be paid by the government "as billed." According to plaintiffs, then, no matter whether hospitals are providing "laboratory services," "radiology services," "diagnostic services," or any other type of service on the twelve-item list, they are permitted to tack on a profitable "facility charge," set that charge at whatever level they please, and then expect the CHAMPUS program to pay it.

Given that their case rests entirely on the interpretation of CHAMPUS federal health benefit program regulations, and that this Court owes significant deference to TMA's interpretation of its own regulations, and that the regulations' ultimate meaning carries fiscal implications for this federal program running into hundreds of millions of dollars, one might expect that plaintiffs would encourage the Court to consult TMA and

---

[1] Undefined capitalized terms have the same meaning as set forth in the Opening Brief of TriWest Healthcare Alliance Corp. in Support of its Motion to Dismiss ("Def. Br. __") and/or the Answering Brief of Plaintiffs in Opposition to Defendant's Motion to Dismiss ("Pl. Br. __").

accept its guidance. Unfortunately, plaintiffs' briefing makes quite clear that the very last thing they want is to present definitive claims to TMA and seek TMA's binding interpretation of its own regulation. They argue that TMA is not a real party in interest in this case; that TMA need not be directly consulted under the doctrine of primary jurisdiction; and that TMA need not even be consulted indirectly through the agency appeals process and the doctrine of exhaustion of administrative remedies.

As set forth in TriWest's opening brief and below, this Court need not and should not consider the implausible arguments underlying plaintiffs' claims. But more important than the fact that plaintiffs have failed the Rule 12(b)(6) standard for stating claims for relief, dismissal is also warranted under Rules 12(b)(1) and (b)(7), under the doctrines of preemption, exhaustion of administrative remedies, primary jurisdiction, and standing. The Court should not accept plaintiffs' invitation to bypass TMA's claim appeal process, to adjudicate thousands of health benefit claims under the complex CHAMPUS regulations, and to force the CHAMPUS program to expend hundreds of millions of federal program dollars. Section I below provides an overview of plaintiffs' implausible interpretation and why it does not establish jurisdiction in this Court. Section II addresses plaintiffs' specific responses and explains why none are convincing.

## ARGUMENT

### I.    Plaintiffs' Interpretation Of The CHAMPUS Regulations Reinforces The Need To Consult TMA Before Addressing This Case On Its Merits.

This case should be dismissed, no matter how it is framed. Plaintiffs urge the Court to rule on TMA's administration of the TRICARE program because they are asking for a purely legal interpretation of the CHAMPUS regulations. In fact, regardless of whether plaintiffs' complaint presents purely legal questions, purely factual questions,

2

or a mixture of the two, those claims are too far-fetched, go directly to the responsibility

of TMA, and, in the absent TMA's presence, should not be adjudicated by this Court.

**A.    Plaintiffs' Theory Turns On A Far-Fetched Interpretation Of The Federal Regulations.**

Plaintiffs' brief asserts that the Department of Defense has "'set rates' for hospital

outpatient services at the amount of government-determined 'allowable charges' for ten

categories of outpatient services." Pl. Br. 8. Plaintiffs thus appear to admit that hospitals

are bound by law to accept the government-determined "allowable charge," rather than

whatever "billed charge" they themselves choose to set for "***ten categories*** of outpatient

services." *Id.* (emphasis added). The ten categories that plaintiffs concede should be

billed by hospitals at "allowable" levels are as follows: (i) laboratory services, (ii)

rehabilitation therapy services, (iii) venipuncture, (iv) radiology services, (v) diagnostic

services, (vi) ambulance services, (vii) durable medical equipment and supplies, (viii)

oxygen and related supplies, (ix) drugs administered other than oral method, and (x)

professional provider services. *See* 32 C.F.R. § 199.14(a)(5)(i)-(x).

Plaintiffs' dispute with the government turns on how the applicable regulations

treat an ***eleventh category*** of reimbursement; namely, "facility charges." The regulation

governing such charges provides:

> (xi) Facility charges. TRICARE payments for hospital outpatient facility charges
> that would include the overhead costs of providing the outpatient service would
> be *paid as billed*.

32 C.F.R. § 199.14(a)(5)(xi) (emphasis added); *see also id.* § 199.14(a)(5)(xii) (***twelfth***

category of payment applicable to "ambulatory surgery services").

In a regulatory preamble accompanying the promulgation of the twelve payment

categories, TMA stated that its rule was intended to "clarify payments for hospital-based

3

outpatient services that have established ***allowable*** TRICARE charges." 70 Fed. Reg. 61368, 61371-72 (Oct. 24, 2005) (emphasis added). The preamble then went on to state: "All ***other*** outpatient hospital services, except for ambulatory surgery services, shall be paid as billed, such as facility charges." *Id.* (emphasis added).

The meaning of these TMA statements is unmistakable. Hospitals are to be paid at fixed prices for all but one of the ten categories of "hospital-based outpatient services" because they have fixed, "allowable" charges set by TMA. By contrast, hospitals are to be paid "as billed" for "other outpatient hospital services, except for ambulatory surgery services" — "such as facility charges." *Id.* In other words, the "facility charge" category is mutually exclusive of the other listed categories, and it is to be employed only when no fixed "allowable charge" has been set by the government.

Plaintiff's theory, in contrast, is that TriWest somehow injured them by refusing to allow them to double dip and gain compensation under multiple categories for precisely the same services. For example, plaintiffs complain that TMA has required TriWest to refuse to pay, first, for "laboratory services" and, then, a second time for a "facility charge" associated with the physical laboratory that provided the services. Plaintiffs likewise complain that TMA has told TriWest to refuse to pay, first, the fixed "allowable charge" for "radiology services" and, then, a second time for the "facility charge" on top of the "allowable charge" for the service itself. Plaintiffs' legal theory, if embraced, would fundamentally subvert the government's goal of controlling costs in a multi-billion dollar health benefit program. *See* 10 U.S.C. § 1079(n).

4

**B.    TMA, The Party With The Most At Stake, Deserves The Opportunity To Be Heard On The Meaning Of Its Own Regulations.**

Although plaintiffs' argument is inherently implausible, this Court need not come to that determination all on its own — or indeed come to that determination at all. Before reaching the merits of plaintiffs' claims, the Court must, of course, assure itself of proper jurisdiction. *Cf. Steel Co. v. Citizens for A Better Env't*, 523 U.S. 83, 95 (1998). In fact, plaintiffs' brief makes plain that the Court lacks jurisdiction to adjudicate their claims.

As an initial matter, plaintiffs have no meaningful response to TriWest's argument that they have sued the wrong party. Plaintiffs contend that TriWest's insistence that plaintiffs should openly and honestly sue the government — rather than trying to tag the federal budget via a suit nominally against TriWest — is tantamount to a position that TriWest functions as a mere "fiscal intermediary" or an "indemnified" contractor and that TriWest is "at risk" for all of the cost of paying claims for services rendered. Pl. Br. 19. But TriWest has never asserted that its Rule 12(b)(1) motion was based on its status as a "fiscal intermediary" or "indemnified" contractor. Moreover, although TriWest in fact does *not* bear all risk for past claims, TriWest has never asserted that bearing or not bearing such a risk was the *sole* basis for its motion to dismiss.

The dispositive point, rather, is one that plaintiffs cannot and do not dispute: regardless of the terms of its contract with TMA and that contract's provisions for handling any incorrect processing of *past* claims, TriWest *must* follow TMA's directions on a going-forward basis. TriWest cannot change the processing of plaintiffs' claims without TMA's guidance and approval. Accordingly, this Court cannot grant prospective relief permitting plaintiffs' future claims to be processed as they request without either (i) ordering TMA to modify its regulations, or (ii) ordering TMA to modify the

5

provisions of TriWest's contract that require that those regulations be followed. Plaintiffs' request for prospective relief conclusively establishes that the government is the real party in interest and that the complaint should be dismissed under Rule 12(b)(7).

Putting aside the necessity of the government's participation, plaintiffs assert that this dispute involves a "purely legal determination" going to the proper interpretation of the TMA's regulations. Pl. Br. 31. In fact, plaintiffs' claims present fact-laden issues and represent, at a minimum, mixed questions of law and fact. Their claims therefore fail because plaintiffs do not so much as allege that they have properly exhausted their available remedies by presenting their claims first to TriWest, and ultimately TMA, for factual review and analysis under the appeal process established by CHAMPUS regulations. There can be no question that plaintiffs' complaint, which requires the re-processing of thousands of already submitted claims, necessarily presents myriad factual complexities, including the following:

- whether plaintiffs actually submitted any claims for "Facility Charges" — a point that plaintiffs still refuse to address;

- whether any claims submitted for facility charges were correctly coded using TMA's Reimbursement Manual;

- whether any such claims included sufficient coding information to render them eligible for processing;

- whether such claims were properly and timely presented to TriWest for payment;

- whether such claims properly fall within the ten regulatory categories for which payment under an "allowable charge" method applies, as opposed to the "billed charge" method preferred by plaintiffs;

- whether such claims improperly sought double recovery; and

- whether TriWest had some other legitimate reason for denying any such claims.

6

To see why the law requires exhaustion of administrative remedies as to each fact-laden dispute, consider the burden this Court would shoulder were it to take ownership of thousands of such claims. TMA already has a system in place to process claims for health care services, using computer-based systems that employ the hundreds of criteria that implement TMA's many procedural and substantive requirements. TMA also has extensive experience and expertise in the often difficult process of applying these rules to specific fact patterns through its administrative appeal process.

But even if plaintiffs' claims *did* raise only pure questions of law (they do not), the Court should still decline to decide this case in the absence of absolute certainty about the TMA's regulatory interpretation. This Court is obliged to defer to the TMA's official interpretation of its own regulations. *See, e.g.*, *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410 (1945) (administrative interpretation entitled to "controlling weight"). Obtaining such an official interpretation is especially critical here, where plaintiffs have framed their claims as turning on an implausible — and apparently rejected — interpretation of broadly applicable regulations that ultimately could impact the CHAMPUS program by hundreds of millions of dollars.

Plaintiffs demand the dedication of substantial judicial resources to decide whether TriWest or plaintiffs have the better understanding of TMA's interpretation of its own regulations. This is unnecessary. Instead, the Court can obtain the government's answer to that question through a referral under the doctrine of primary jurisdiction and avoid usurping TMA's primary responsibility in administering the TRICARE program. If plaintiffs' claims are in fact "purely legal," then those issues go to the question of how

the regulations should be interpreted, and they should then be dismissed because they are squarely within TRICARE's primary jurisdiction.

**II.     Plaintiffs' Responses To The Motion To Dismiss Are Not Convincing.**

The Court should reject plaintiffs' attempt to usurp TMA's administration of its TRICARE benefit program and to impose their interpretation of government payment rules through litigation without the presence of the agency responsible for the program.

**A.     Plaintiffs Have Filed The Wrong Claims, Against the Wrong Party, In The Wrong Forum.**

**1.     Plaintiffs' Claims Are Expressly Preempted.**

Even though they concede Congress intended to preempt state laws that interfere with the objective of maintaining TRICARE's uniform benefit and cost structure, *see* Pl. Br. 17, and even though they seek to bypass TMA to adjudicate the meaning of CHAMPUS regulations, plaintiffs nonetheless argue their claims are not "related to" CHAMPUS and, therefore, not preempted. These arguments cannot withstand scrutiny.

Plaintiffs first assert that their claims are not preempted because the statute's preemption provision, 10 U.S.C. § 1103, references only regional TRICARE contracts (*e.g.*, the contract between the government and TriWest). *See* Pl. Br. 14. But, in fact, the agency has issued regulations interpreting the statute to preempt "any" state law claims "in connection with" or "in relation to" the TRICARE regional contracts. 32 C.F.R. § 199.17(a)(7)(ii); *see Horn v. Thoratec Corp.*, 376 F.3d 163, 171 (3d Cir. 2004) (court should defer to "regulations interpreting the scope of [a statute's] pre-emptive effect"). Moreover, as courts have recognized, the "in connection with" and "in relation to" language is "deliberately expansive." *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 45, 47 (1987) (giving the phrase "relate to" its "broad common-sense meaning"); *FMC Corp. v.*

8

*Holliday*, 498 U.S. 52, 58 (1990); *see also Hayes v. Prudential Ins. Co. of America*, 819 F.2d 921 (9th Cir. 1987) ("ERISA's preemption clause is similar to … FEHBA['s]"). CHAMPUS preemption is especially broad as it preempts "any" state law necessary to "achieve any other important Federal interest." 10 U.S.C. § 1103(a)(2).

Plaintiffs argue that the phrase "relate to" can be over-extended, and that "laws of general applicability" are never considered to "make an impermissible 'reference' to the preempted subject matter." Pl. Br. 16. Plaintiffs also argue that there is no preemption unless the federal scheme provides an "exclusive" remedy. Pl. Br. 18; *but see* Def. Br. 17-19 (citing cases). These arguments are baseless. Whether a federal scheme includes an "exclusive remedy" says nothing about whether a given claim falls within the scope of a preemption provision. Moreover, Courts have not hesitated to deem "generally applicable" claims preempted, *see* Def. Br. 16-18, because such claims are equally capable of interfering with federal objectives. *See Medtronic, Inc. v. Lohr*, 518 U.S. 470, 504 (1996) (Breyer, J., concurring). In fact, the Third Circuit recently reiterated its broad interpretation of the phrase "relate to" in holding that "State law claims of bad faith and breach of contract … would ordinarily fall within the scope of ERISA preemption, if such claims relate to an ERISA-governed benefits plan." *Early v. United States Life Ins. Co.*, Civ. No. 05-4696, slip op. at *1 (3d Cir. Mar. 22, 2007) (citing *Pryzbowski v. U.S. Healthcare, Inc.*, 245 F.3d 266, 278 (3d Cir. 2001) (claims for benefits denied are preempted "even when the claim is couched in terms of common law negligence or breach of contract")).

Plaintiffs admit that the scope of "CHAMPUS preemption is confirmed by the scope of the Federal Employee Health Benefit Act's ('FEHBA') original preemption

provision," and that FEHBA preemption applies to "matters relating to health benefits or coverage." Pl. Br. 16 n.10. Indeed, the case on which they rely, *Empire Healthchoice Assurance, Inc. v. McVeigh*, 126 S. Ct. 2121, 2128 (2006)) plainly states that "state law ... is displaced on matters of 'coverage or benefits.'" 126 S. Ct. at 2128-29. Plaintiffs' claims in this case are thus preempted because they seek the payment of assigned benefits that are governed by the CHAMPUS health benefit program.

Plaintiffs' claims fall comfortably within the CHAMPUS preemption statute. Their claims are not only "related to" TriWest's contract with TMA, but also are premised *entirely* on an interpretation of what the CHAMPUS regulations require. If plaintiffs' claims are permitted to move forward in this Court, there is no doubt that adjudicating the claims will directly affect important federal interests, including the "benefit structure and cost" of TRICARE. *See* 32 C.F.R. § 199.17(a)(7)(i) (CHAMPUS preemption is based on "important Federal interests, including ... assurance of uniform national health programs ... at the lowest possible cost to the Department of Defense").

Finally, plaintiffs rely on *Board of Trustees of Bay Med. Ctr. v. Humana Military Healthcare Servs., Inc.*, 447 F.3d 1370 (Fed. Cir. 2006), and *Baptist Physician Hospital Org., Inc. v. Humana Military Healthcare Servs., Inc.*, 368 F.3d 894 (6th Cir. 2004), but these cases do not even purport to address preemption. *See Wolf v. Reliance Standard Life Ins. Co.*, 71 F.3d 444, 448 (1st Cir. 1995) (preemption defense is waivable). Nor can they overcome the on-point authority cited in TriWest's brief — *Bynum v. Aetna Gov't Health Plan*, 907 F. Supp. 320, 321 (S.D. Cal. 1995) — which holds that the TRICARE regime is "specifically intended" to displace common law claims. In a footnote, plaintiffs argue that *Bynum* is distinguishable because a judicial decision there would have resulted

10

"in changing the scope of services provided to CHAMPUS beneficiaries." Pl. Br. 17 n.12. But this case is just as problematic. As in *Bynum*, judicial rulings on plaintiffs' claims would displace TMA's ability to a maintain uniform CHAMPUS cost and benefit structure as Congress intended.

### 2.   Plaintiffs Have Not Sued The Real Party in Interest.

Plaintiffs do not dispute that if the government is the real party in interest their complaint should be dismissed. Nor do they dispute that the government is the real party in interest when "the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration," or "restrain the Government from acting," or "compel it to act." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102 n. 11 (1984) (quoting *Dugan v. Rannk*, 372 U.S. 609, 620 (1963)). Nor do they deny that adopting their preferred interpretation of the regulations would "interfere with" TMA's "administration" of the CHAMPUS program and "compel" TMA "to act." *Id.*

Plaintiffs nonetheless argue that, because TriWest is purportedly "at risk," this case is the same as *Bay Medical*. Pl. Br. at 19-22. But that case was quite different. There, unlike here, TMA was not the real party in interest because the contractor, Humana, agreed to reimburse hospitals at rates *in excess* of the government-approved rates. *See* 447 F.3d at 1375; *Baptist*, 368 F.3d at 901. Those plaintiffs did not ask the court to interpret TMA regulations on the applicability of CHAMPUS allowable charges.

Here, unlike in *Bay Medical*, there are no allegations that TriWest agreed to reimburse hospitals at rates that exceed what the federal regulations mandate. The complaint instead alleges that TriWest purportedly failed to comply with CHAMPUS regulations. *See* Compl. ¶¶ 28-34. And that difference is crucial. Although TriWest may be "at risk" if it promised to pay for claims at amounts *in excess of* the federally

mandated allowable charge, it does not follow that TriWest is "at risk" for amounts needed to correct *underpayments*. If underpayments did occur, and the regulations did require TriWest to pay more to plaintiffs, there is no reason why additional federal funds could not, with TMA's approval, be made available. Of course, this is precisely why courts considering claims seeking recoveries for the alleged underpayment of federally mandated benefits have consistently held that the government is the real party in interest. *See* Def. Br. 21-22 (citing cases).

### 3.    The Government Is A Necessary And Indispensable Party.

For reasons set forth in TriWest's opening brief, dismissal under Rule 12(b)(7) is appropriate because (1) absent the government, the Court cannot grant complete relief; (2) any judgment would, as a practical matter, impair and impede the government's ability to protect its interests; and (3) litigating this suit would subject TriWest to a substantial risk of inconsistent obligations.    *See* Def. Br. 24.    Without TMA's involvement, the Court cannot know its official position regarding its own regulation and any decision will necessarily infringe on TMA's control over federal program benefits.

It nonetheless bears emphasizing just how tenuous plaintiffs' arguments are. They insist that TriWest has not "identified a single instance in which TMA" has interpreted the regulations in a manner "that conflicts" with their position. Pl. Br. 24-25. In fact, however, two years ago Northwest's collection agent, Westcott Healthcare LLC, a subsidiary of Duane Morris LLP (*see* http://www.duanemorris.com/news/ static/affinq081405.pdf), wrote to TriWest, seeking reimbursements based on the same interpretation of the regulations asserted in the compliant:

> [I]t is our position ... that the Hospitals were, and are, entitled to be paid their ***billed charges for all outpatient services*** rendered by the Hospitals, with the exception of ... "Ambulatory Surgical Services" ...

12

*See* Haggerty Aff., Ex. A (A61-65) (emphasis added). On September 28, 2005, TriWest

forwarded that letter to TMA, which replied with the following guidance:

> Your September 28, 2005, letter asked for a technical interpretation of the
> contract regarding the current TRICARE reimbursement methodology for
> outpatient care provided by non-contracted, Medicare-recognized, sole
> community hospitals. This was in response to a letter to TriWest from Westcott
> Healthcare LLC, asserting that TriWest should pay billed charges for all
> outpatient services provided by sole community hospitals.    This is my
> interpretation ...
>
> ... we ***disagree with the argument put forth by [the hospitals] and believe that
> TriWest has paid the hospitals in question appropriately,*** as required by 32 CFR
> 199 and the TRICARE Manuals.

*See* Haggerty Aff., Ex. C (A70-71) (emphasis added). TMA's letter directly contradicts

the arguments that plaintiffs are pressing before this Court.

Because this case satisfies the elements of Rule 19(a), and because the

government is immune from suit, the Court should dismiss the complaint under the

authorities (including Supreme Court precedent) cited in TriWest's opening brief. *See*

Def. Br. 25-26 (citing cases). Even if TMA's immunity were not a compelling reason to

dismiss, and even if the Court were to consider the Rule 19(b) factors, it should recognize

in "equity and good conscience" that this case should not proceed.

The Rule 19(b) factors are satisfied here because litigation would necessarily

prejudice and unduly interfere with TMA's interests and obligations to administer a

uniform TRICARE benefit. Moreover, contrary to plaintiffs' assertions, although they

lack "contracts" with the government, they still possess an "adequate remedy" under the

Tucker Act's waiver of sovereign immunity for suits arising under money-mandating

regulations. *See* Def. Br. 21-22 (citing 28 U.S.C. §§ 1491(a)(1), 1346(a)(2)); *see also*

*Brittel v. United States*, 372 F.3d 1370 (Fed. Cir. 2004) (beneficiaries can sue the United

States for CHAMPUS benefits). Having accepted assignment of CHAMPUS benefits,

the hospitals are entitled to seek relief against the government in the Court of Federal Claims. *See, e.g., McLean Hosp. Corp. v. United States*, 26 Cl. Ct. 1144 (1992); *Green Hosp. v. United States*, 23 Cl. Ct. 393 (1991); *Sellers v. Brown*, 633 F.2d 106 (8th Cir. 1980); *see also* Exhibit 1 (civil cover sheet code for CHAMPUS benefit actions).

Plaintiffs' rely on *Gardiner v. Virgin Islands Water & Power Auth.*, 145 F.3d 635 (3d Cir. 1998), suggesting (incorrectly) that the Third Circuit requires this Court to "balance all four of the Rule 19(b) factors." Pl. Br. 7, 26-27; *cf. Angst v. Royal Maccabees Life Ins. Co.*, 77 F.3d 701, 706 (3d Cir. 1996) (courts may dismiss based on a single factor under Rule 19(b)). But that case does not support their position. *Gardiner* involved an *express* contract dispute, not a purported implied-in-fact contract based on a government contractor's alleged failure to comply with regulations, and the agency's interpretation of its own regulation was not at issue. *See id.* at 639. Moreover, *Gardiner* did not address the question of sovereign immunity, which justifies dismissal in this case.

Nor does it make any difference whether the government has taken steps to intervene under Rule 24. *See* Pl. Br. 7, 26. The Court's decision under Rule 12(b)(7) should not depend on speculation regarding the government's reasons for exercising or declining to exercise its intervention rights. *See, e.g., Housing Auth. of City of Jersey City v. Jackson*, 749 F. Supp. 622, 627-28 (D.N.J. 1990) (refusing to dismiss agency that did not wish to be a party because it was found to be a "necessary party").

### 4.    Without the Government, Plaintiffs Lack Standing.

As TriWest noted in its opening brief, plaintiffs have not carried their burden of establishing standing. *See* Def. Br. 26-28. Plaintiffs insist that they have standing to sue because their injuries are traceable to TriWest's alleged failure to comply with the federal regulations. But this argument depends entirely on their conclusory, far-fetched

14

interpretation of the federal regulations. *Cf.* Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (2d ed. 1997) (courts should reject "legal conclusions," "unsupported conclusions," "unwarranted inferences," and "unwarranted deductions," when considering 12(b)(6) motions). More significantly, plaintiffs offer no response to TriWest's argument that plaintiffs' claims, which seek prospective relief, are not redressable. *See* Def. Br. 27-28 (citing Compl. ¶ 34). Because TriWest must follow TMA's directions, the Court cannot grant prospective relief permitting plaintiffs' future claims to be processed as they request without ordering TMA to modify its regulations or its directions to TriWest.

### 5. TMA Has Primary Jurisdiction.

Even if the Court is not inclined to dismiss, it should refer the administrative questions raised in plaintiffs' complaint to TMA.

Plaintiffs argue that the doctrine of primary jurisdiction does not apply because TMA has no procedures to address pure questions of law. But, as noted above, plaintiffs' claims actually present a myriad of factual complexities. More fundamentally, contrary to plaintiffs' assertions, "the presence of ... legal issues has not prevented" courts "from concluding that primary jurisdiction lay in an administrative agency." *Tassy v. Brunswick Hosp. Ctr.*, 296 F.3d 65, 68 (2d Cir. 2002). The purpose of judicial deference to an agency's primary jurisdiction is to secure "[u]niformity and consistency in the regulation of business entrusted to a particular agency." *Far East Conference v. United States*, 342 U.S. 570, 574 (1952). If courts act "without any consideration of what a specialized agency has to offer[,] 'parties who are subject to the agency's continuous regulation may become the victims of uncoordinated and conflicting requirements.'" *Clark Oil, Inc. v. Texaco*, 609 F. Supp. 1373, 1381 (D. Del. 1985) (citations omitted).

15

Courts have not hesitated to refer legal questions to agencies for guidance. *See,*
*e.g., MCI Commc'n Corp. v. American Tel. & Tel. Co.*, 496 F.2d 214, 223-24 (3d Cir.
1974) (deferring to FCC's primary jurisdiction to decide legal question whether AT&T
was required under FCC's prior pronouncements to grant interconnection rights to MCI);
*Laveson v. Trans World Airlines*, 471 F.2d 76, 81 (3d Cir. 1972). In fact, courts have
held that applying the doctrine of primary jurisdiction is especially appropriate where, as
here, "complex policy considerations are at issue" and the agency's expertise is necessary
for the "sound development of regulatory policy." *Clark Oil*, 609 F. Supp. at 1381.
Applying the doctrine also is appropriate when an action otherwise within a court's
jurisdiction "raises a question of the validity of a rate" set by an agency. *Richman Bros.*
*Records, Inc. v. U.S. Sprint Commc'n Co.*, 953 F.2d 1431, 1435 n.3 (3d Cir.1991).
Where, as here, plaintiffs' common law claims depend on an interpretation of rights
under regulations, referral to the agency is "the appropriate course of action." *Oh v.*
*AT&T Corp.*, 76 F. Supp. 2d 551, 557 (D.N.J. 1999) (referring matter to FCC because
common law contract claims required interpretation of rights provided by an FCC tariff).

### B.    Plaintiffs Have Failed To Exhaust Their Administrative Remedies.

The complaint also should be dismissed because plaintiffs have not exhausted
their administrative remedies. As noted above, plaintiffs' claims inevitably raise myriad
*factual* complexities including two unavoidable threshold *factual* issues that must be
resolved through the administrative appeals process: whether the hospitals actually
submitted claims for "facility charges" to TriWest for payment, and whether TriWest
paid plaintiffs' properly submitted facility charges "as billed." Def. Br. 32.

Plaintiffs offer no meaningful response to this critical point. They instead take the
extraordinary position that they should be paid for whatever they bill for all 12 categories

16

of outpatient services, regardless of the maximum allowable charge for the applicable category of service set by the government. *See* Pl. Br. 31. Moreover, they purport that they cannot avail themselves of TMA's administrative appeals process because their claims reflect "a dispute regarding a requirement of the law or regulation." Pl. Br. 31 (quoting 32 C.F.R. § 199.10(a)(6)(i)). But plaintiffs' interpretation makes no sense. The parties' dispute is not "regarding a requirement of the law or regulation" because plaintiffs are not challenging the promulgation, application, or legality of any TRICARE rule. Of course, they ask this Court to determine what payments are required under section 199.14(a)(5) for certain categories of services but that is not a dispute that turns exclusively on the regulations' "legal requirements." Instead, it is a fact-laden dispute that depends on which claims submitted by the hospitals fall within the ten categories for payment is due on an "allowable charge" as opposed to a "billed charge."

In any event, if plaintiffs are correct and their dispute raises only a "purely legal determination" that cannot be resolved through the claim appeal process, the Court should either dismiss the case outright or make a primary jurisdiction referral to TMA. As noted above, dismissal would be appropriate because a legal obligation to follow a disputed regulatory scheme does not give rise to, and cannot serve as consideration for, common law duties. *See infra.* 18-20; Def. Br. 37-40; *see also Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko*, 540 U.S. 398, 415-16 (2004) (complaint premised solely on violations of telecommunications regulatory requirements does not state independent claim for violation of Sherman Act). Moreover, if the issue solely concerns the interpretation of section 199.14(a)(5), plaintiffs' remedies are against the government, not TriWest. In particular, plaintiffs must either convince the agency to change its

17

regulations or bring suit under the Administrative Procedures Act challenging the agency's regulatory interpretation as arbitrary and capricious. *See* 5 U.S.C. § 706.

### C.    Plaintiffs Failed To State Claims On Which Relief Can Be Granted.

The Court also should dismiss the complaint because plaintiffs failed to allege the elements of an "implied-in-fact" contact or a claim for unjust enrichment.

### 1.    Plaintiffs Fail To State A Claim For Breach Of Contract.

In their brief, plaintiffs cite no paragraphs in their complaint alleging the basic elements of an implied-in-fact contract — mutuality of intent, consideration, and lack of ambiguity in offer and acceptance. Instead, plaintiffs argue that the elements of their claim may be "implied" from their description of the regulatory scheme. *See, e.g.*, Pl. Br. 36 ("[c]onsideration may be implied"); *id*. 38 (hospitals "rendering of services ... implies the existence of both an offer and acceptance"). But plaintiffs' arguments merely underscore that they have not even bothered to allege the basic elements of their claims.

More significantly, plaintiffs cannot overcome the fundamental principle that a *legal* obligation to follow federal law does not create an additional implied-in-fact *contractual* obligation. *See* Def. Br. 37-38. The hospitals rely on *Metrophones Telecomm., Inc. v. Global Crossing Telecomm., Inc.*, 423 F.3d 1056 (9th Cir. 2005), but they misstate the holding of the case and selectively quote the court's decision. Contrary to plaintiffs' suggestions, *Metrophones* did *not* find that the plaintiff had stated a breach of implied-in-fact contract. The language selectively quoted by the hospitals is not the court's holding, but only a summary of the plaintiff's arguments, as is clear when the relevant quotation is read in full. *See Metrophones*, 423 F.3d at 1075 ("***Plaintiff characterizes*** the interaction between itself and Defendant as conduct evidencing a mutual intention to enter into a contract. ***Plaintiff's theory is that***, by making its

18

payphones available ..."). The *Metrophones* court merely held that *if* the plaintiff had stated a claim under state law, the claim was not preempted. *Id.* at 1076. But the court took special care to emphasize that it was not commenting on the merits of the plaintiff's claims. There, unlike here, the defendant had "not argued ... that any of those claims fails to state a claim" under Rule 12(b)(6). *Id.* at 1075 n.13.

Plaintiffs also contend that "the pre-existing duty rule" applies only to the modification of contracts, and does not apply here because TriWest "negotiates with and pays providers as the parties see fit — either by entering into a network contracts [*sic*] or paying providers according to TMA set rates." Pl. Br. 37. But this argument is inconsistent with plaintiffs' claims — namely, that TriWest does not negotiate with the hospitals, but rather has an implied contractual obligation to follow federal law. In any event, plaintiffs' position cannot be reconciled with the Second Circuit's dispositive holding that a government program administrator does *not* have an implied-in-fact contract with program beneficiaries to follow program regulations. *See Murray v. Northrop Grumman Info. Tech.*, 444 F.3d 169, 177-78 (2d Cir. 2006).

## 2. The Complaint Fails To State A Claim For Unjust Enrichment.

Plaintiffs' complaint also fails to allege the basic elements of a claim for unjust enrichment. *See* Def. Br. 39. As explained in TriWest's opening brief, the only "benefit" alleged in the complaint is treatment of TRICARE beneficiaries by the hospitals, but that benefit is conferred on the government and the TRICARE beneficiaries, not on TriWest. Plaintiffs fail to allege that TriWest received a benefit to which it was not entitled.

Here, again, the hospitals rely on *Metrophones*. But, as noted above, the *Metrophones* court expressly declined to consider whether the plaintiff had stated a claim

because the argument was never raised by the defendant. *Id.* at 1075 n.13. Plaintiffs similarly distort and/or misread the other cases cited on page 39 of their brief. *See Precision Pay Phones v. Qwest Commc'n Corp.*, 210 F. Supp. 2d 1106, 1112 (N.D. Cal. 2002) (remanding to state court and noting, without determining that defendant might be unjustly enriched if it used plaintiff's telephones and paid plaintiff "nothing"); *Michael Reese Hosp. and Med. Ctr. v. Chi HMO, Ltd.*, 554 N.E.2d 472, 475 (Ill. App. Ct. 1990) (HMO unjustly enriched at plaintiff's expense if allowed to retain state payments intended to reimburse plaintiff for legally required services); *Merkle v. Health Options, Inc.*, 940 So.2d 1190, 1199 (Fl. Dist. Ct. App. 2006) (concluding without substantive explanation or analysis that plaintiff "alleged facts sufficient to support its argument that [its] treatment of subscribers conferred a benefit on the [defendant] HMOs"). None of these cases overcome plaintiffs' failure to plead the essential elements of their claim.

## CONCLUSION

For the foregoing reasons, the complaint should be dismissed with prejudice.

Respectfully submitted,

Lewis H. Lazarus (#2374)
Matthew F. Lintner (#4371)
Katherine J. Neikirk (#4129)
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, Delaware 19801-1494
Telephone: (302 ) 888-6800
Facsimile: (302) 571-1750
llazarus@morrisjames.com
mlintner@morrisjames.com
kneikirk@morrisjames.com

OF COUNSEL

Robert S. Ryland
Robert R. Gasaway
Ashley C. Parrish
Scott M. Abeles
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W., Suite 1200
Washington, D.C. 20005
Telephone: (202) 879-5000
Facsimile: (202) 879-5200

*Attorneys for Defendant*
*TriWest Healthcare Alliance Corp.*

Dated: April 13, 2007

20

# Exhibit 1

Rules of the United States Court of Federal Claims

Form 2 -- Civil Cover Sheet

# RULES OF THE UNITED STATES
# COURT OF FEDERAL CLAIMS

As amended through June 20, 2006



**FORM 2**
**COVER SHEET**

# In The United States Court of Federal Claims

## Cover Sheet

Plaintiff(s) or Petitioner(s)

_____

_____

If this is a multi-plaintiff case, pursuant to RCFC 20(a), please attach an alphabetized, numbered list of all plaintiffs.

Name of the attorney of record (See RCFC 83.1(c)):        _____

Firm Name:                                                _____

Post Office Box:                                          _____

Street Address:                                           _____

City-State-Zip:                                           _____

Telephone & Facsimile Numbers:                            _____

Is the attorney of record admitted to the Court of Federal Claims Bar?        ☐ Yes        ☐ No

Does the attorney of record have a Court of Federal Claims ECF account?        ☐ Yes        ☐ No
If not admitted to the court or enrolled in the court's ECF system, please call (202) 357-6402 for admission papers and/or enrollment instructions.

Nature of Suit Code:        ☐ ☐ ☐
Select only one (three digit) nature-of-suit code from the
attached sheet and if numbers 118, 134, 226, 312, 356, or 528 are used, please explain.

Agency Identification Code:        ☐ ☐ ☐
See attached sheet for three-digit codes.

Amount Claimed:        $_____
Use estimate if specific amount is not pleaded.

Disclosure Statement:
Is a RCFC 7.1 Disclosure Statement required?        ☐ Yes        ☐ No
If yes, please note that two copies are necessary.

Bid Protest:
Indicate approximate dollar amount of procurement at issue: $_____
Is plaintiff a small business?        ☐ Yes        ☐ No

Vaccine Case:
Date of Vaccination: _____

Related Cases:
Is this case directly related to any pending or previous case?        ☐ Yes        ☐ No
If yes, you are required to file a separate notice of directly related case(s). See RCFC 40.2.

128

## Nature-of-Suit Codes for General Jurisdiction Cases

100  Contract - Construction - (CDA)
102  Contract - Fail to Award - (CDA)
104  Contract - Lease - (CDA)
106  Contract - Maintenance - (CDA)
108  Contract - Renovation - (CDA)
110  Contract - Repair - (CDA)
112  Contract - Sale - (CDA)
114  Contract - Service - (CDA)
116  Contract - Supply - (CDA)
118  Contract - Other - (CDA)

120  Contract - Bailment
122  Contract - Bid Preparation Costs
124  Contract - Medicare Act
126  Contract - Realty Sale
128  Contract - Subsidy
130  Contract - Surety
132  Contract - Timber Sale
134  Contract - Other

136  Contract - Other - Wunderlich

138  Contract - Injunctions (Pre Award)
140  Contract - Injunction (Post Award)

200  Tax - Allowance of Interest
202  Tax - Declaratory Judgment - 28:1507
204  Tax - Estate
206  Tax - Excise

208  Tax - Gift
210  Tax - Income, Corporate
212  Tax - Income, Individual
214  Tax - Informer's Fees
216  Tax - Preparer's Penalty
218  Tax - Railroad
       Retirement/Unemployment Tax Act
220  Tax - TEFRA Partnership - 28:1508
222  Tax - Windfall Profit
       Overpayment - Interest
224  Tax - 100% Penalty - 26:6672 -
       Withholding
226  Tax - Other

300  Civilian Pay - Back Pay
302  Civilian Pay - COLA
303  Civilian Pay - Disability Annuity
304  Civilian Pay - FLSA
306  Civilian Pay - Overtime Compensation
308  Civilian Pay - Relocation Expenses
310  Civilian Pay - Suggestion Award
312  Civilian Pay - Other

340  Military Pay - Back Pay
342  Military Pay - CHAMPUS
344  Military Pay - Correct records
346  Military Pay - Correct/Reinstate
348  Military Pay - Reinstatement

350  Military Pay - Relocation Expenses
352  Military Pay - Retirement
354  Military Pay - SBP
356  Military Pay - Other

500  Common Carrier - transportation
502  Copyright
504  Native American
506  Oil Spill Clean Up
508  Patent
510  Taking - Personalty
511  Taking - FIRREA
512  Taking - Realty
514  Taking - Other
516  Miscellaneous - Damages
518  Miscellaneous - Lease
520  Miscellaneous - Mineral Leasing Act
522  Miscellaneous - Oyster Growers
       Damages
524  Miscellaneous - Safety Off. Ben. Act
526  Miscellaneous - Royalty/Penalty Gas
       Production
528  Miscellaneous - Other
529  TRIS
532  CLA Review - Japanese Internment
534  Indian Claims Commission
535  Informer's Reward
536  Spent Nuclear Fuel

## Nature-of-Suit Codes for Vaccine Cases

456  Injury - DPT & Polio
457  Injury - D/T
458  Injury - DTP/DPT
459  Injury - Measles
460  Injury - M/M/R
461  Injury - Measles/Rubella
462  Injury - Mumps
463  Injury - Pertussis
464  Injury - Polio - inactive
465  Injury - Polio - other
466  Injury - Rubella
467  Injury - Tetanus & Diphtheria
468  Injury - Tetanus & Tox.
469  Injury - Other

484  Injury - Hepatitis B
485  Injury - Hemophilus Influenzae
486  Injury - Varicella
490  Injury - Rotavirus
492  Injury - Thimerosal
494  Injury - Trivalent Influenzae

470  Death - DPT & Polio
471  Death - D/T
472  Death - DTP/DPT
473  Death - Measles
474  Death - M/M/R
475  Death - Measles/Rubella
476  Death - Mumps
477  Death - Pertussis

478  Death - Polio - inactive
479  Death - Polio - other
480  Death - Rubella
481  Death - Tetanus & Diphtheria
482  Death - Tetanus & Tox.
483  Death - Other
487  Death - Hepatitus B
488  Death - Hemophilus Influenzae
489  Death - Varicella
491  Death - Rotavirus
493  Death - Thimerosal
495  Death - Trivalent Influenzae

129

Exhibit 2

Westlaw.

Slip Copy                                                                                    Page 1
Slip Copy, 2007 WL 852363 (3rd Cir.(Pa.))
**(Cite as: 2007 WL 852363 (3rd Cir.(Pa.)))**

H

**Briefs and Other Related Documents**

Only the Westlaw citation is currently available.

This case was not selected for publication in the Federal Reporter.

NOT PRECEDENTIAL

Please use FIND to look at the applicable circuit court rule before citing this opinion. Third Circuit Local Appellate Rule 28.3(a) and Internal Operating Procedure 5.3. (FIND CTA3 Rule 28.0 and CTA3 IOP APP I 5.3.)

United States Court of Appeals,
Third Circuit.
Roy W. EARLY, Appellant
v.
The UNITED STATES LIFE INSURANCE COMPANY in the CITY OF NEW YORK.
**No. 05-4696.**

Submitted Under Third Circuit LAR 34.1(a) March 5, 2007.
Filed March 22, 2007.

On Appeal from the United States District Court for the Western District of Pennsylvania, (D.C. No. 05-cv-01010), District Judge: Honorable Arthur J. Schwab.

Christy Cherpes, Vincler & Knoll, Pittsburgh, PA, for Appellant.

Salvatore A. Clemente, Wilson, Elser, Moskowitz, Edelman & Dicker, Philadelphia, PA, for The United States Life Insurance Company in the City of New York.

Before SLOVITER and AMBRO, Circuit Judges, and BRODY, [FN*] District Judge.

> FN* Hon. Anita B. Brody, United States District Court for the Eastern District of Pennsylvania, sitting by designation.

OPINION
SLOVITER, Circuit Judge.

*1 Roy W. Early appeals from the District Court's dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure of his action alleging breach of contract when defendant insurance company denied his claim for benefits under the life insurance policy he purchased for his now-deceased ex-wife. We will affirm.

I.

After United States Life Insurance Company ("US Life") denied Early's claim for life insurance proceeds following the death of his former wife, Danielle Burkett-McKrisky, Early filed a complaint against appellee U.S. Life in Pennsylvania state court, alleging breach of contract, bad-faith denial of his claim for proceeds under the policy, and what he later conceded to be an unactionable claim brought directly under Pennsylvania's Unfair Insurance Practices Act ("UIPA"), 40 Pa. Stat. Ann. §§ 1171.1 et seq. Later that month, U.S. Life removed the action to federal court based on diversity of citizenship between the parties [FN1] and on the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 et seq. It asserted that "this case is removable because the allegations contained in plaintiff's complaint deal exclusively with rights conferred or alleged to be conferred under an employer-provided benefit plan [governed by ERISA.]" Notice of Removal at 1, *Early v. United States Life Ins. Co. in the City of New York*, No. 05-1010 (W.D.Pa. July 25, 2005). Early did not challenge this removal.

> FN1. Early's complaint avers that he is a resident of Pennsylvania and that U.S. Life is headquartered in New York.

US Life subsequently filed a motion to dismiss under Rule 12(b)(6). However, its motion "did not request dismissal of the complaint due to its claims being preempted by ERISA[.]" Feb. 28, 2007 Supp. Letter Br. at 2. Rather, it challenged Early's claims under Pennsylvania state law. Specifically, with regard to Early's breach-of-contract claim, U.S. Life argued

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

that the fact that Early had divorced his wife before her death meant that coverage was unambiguously barred under the language of the policy. The District Court agreed, ruling that the undisputed fact of Early's divorce [FN2] defeated his breach-of-contract claim as a matter of contract interpretation, that he thus could not establish a bad-faith claim under Pennsylvania law, and that Early's claim under the UIPA provides no private cause of action.

> FN2. The fact of Early's divorce goes unreferenced in his complaint. However, he does not dispute this fact in his brief before this court, and reference to the divorce appears in the denial letter attached to U.S. Life's motion to dismiss. Indeed, Early noted in his response to U.S. Life's motion to dismiss that he "failed to attach a copy of the denial letter," App. at 46, apparently inadvertently, and that he intended to amend his complaint to do so as it supported one of his claims. See _Pension Ben. Guar. Corp. v. White Consol. Inds., Inc._, 998 F.2d 1192, 1196 (3d Cir.1993) ("We now hold that a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document. Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied.") (internal citations omitted).

## II.

ERISA is designed "to provide a uniform regulatory regime over employee benefit plans. To this end, ERISA includes expansive pre-emption provisions, see ERISA § 514, 29 U.S.C. § 1144, which are intended to ensure that employee benefit plan regulation would be exclusively a federal concern." _Aetna Health Inc. v. Davila_, 542 U.S. 200, 208 (2004) (internal quotation marks and citation omitted). We have held that claims, such as the instant claim, "challenging the quantum of benefits due under an ERISA-regulated plan are completely preempted under § 502(a)'s civil enforcement scheme." _Pryzbowski v. U.S. Healthcare, Inc._, 245 F.3d 266, 272 (3d

Cir.2001).

State law claims of bad faith and breach of contract, such as those Early asserts, would ordinarily fall within the scope of ERISA preemption, if such claims relate to an ERISA-governed benefits plan . [FN3] See _Pilot Life Ins. Co. v. Dedeaux_, 481 U.S. 41, 54-57 (1987) (holding that state law tort of bad-faith claim denial was preempted under ERISA); _Pryzbowski_, 245 F.3d at 278 (holding that suits against insurance companies for denial of benefits, "even when the claim is couched in terms of common law negligence or breach of contract," are preempted). Because neither party discussed the applicability of ERISA in its briefs, we instructed them to prepare to discuss at oral argument whether Early's claims were preempted by ERISA and invited them to submit supplemental briefing on the issue. However, Early moved to waive oral argument and failed to submit a supplemental brief. Thus, although Early's complaint avers that he, an airline pilot, purchased the policy through his pilots' union and his opening brief states that the policy was "offered through his work," Br. at 4, he has offered no position on the question of ERISA's applicability here.

> FN3. An employee welfare benefit plan is defined under ERISA as "any plan, fund, or program which was ... established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise ... benefits in the event of ... death." 29 U.S.C. § 1002(1).

*2 In any event, Early's claim for breach of contract fails as a matter of law under Pennsylvania law, and would fail even if his claim were to be recharacterized as arising under Section 502(a)(1)(B), ERISA's civil enforcement provision. [FN4] The terms of the policy are clear and unambiguous. The policy states that only "full-time employees of a Participating Employer" and "[a]ll those under age 70 who are lawful spouses" of full-time employees are eligible for coverage. Supp.App. at 6. [FN5] It plainly provides that

Slip Copy
Slip Copy, 2007 WL 852363 (3rd Cir.(Pa.))
**(Cite as: 2007 WL 852363 (3rd Cir.(Pa.)))**

Page 3

insurance will end "for a spouse" on "the date her marriage ends by divorce or annulment." *Id.*

> FN4. Aside from a passing reference at 4, Early's brief makes no argument as to why the District Court's dismissal of his claim for bad-faith denial of benefits under Pennsylvania law was in error. "It is well settled that an appellant's failure to identify or argue an issue in his opening brief constitutes waiver of that issue on appeal." *United States v. Pelullo,* 399 F.3d 197, 222 (3d Cir.2005). Therefore, we limit our consideration to the breach of contract claim but note that because we hold that claim fails, any claim for bad-faith denial of benefits necessarily would also fail.

> FN5. US Life has moved this court for costs incurred in conjunction with its submission of a supplemental appendix. Apparently Early neglected to consult with U.S. Life on the creation of the appendix to this appeal, which failed to include a copy of the relevant policy. This motion is denied.

Nevertheless, Early asserts that he continued to pay premiums on the policy, [FN6] and refers to the provision of the policy which provides: "If insurance ends for all other reasons (for employees or lawful spouses)[, a] person may continue their [sic] insurance for as long as they [sic] wish by continuing to pay premiums." Supp.App. at 7. He argues that his reasonable expectations as an insured would be frustrated were he not entitled to recover the insurance benefit. The policy language establishes that only employees and lawful spouses can continue their coverage via such payments. It is well-settled that parties cannot invoke Pennsylvania's reasonable expectation doctrine to create an ambiguity where the policy language itself is unambiguous, as it is in the instant case. *Canal Ins. Co. v. Underwriters at Lloyd's London,* 435 F.3d 431, 440 (3d Cir.2006); *Liberty Mut. Ins. Co. v. Treesdale, Inc.,* 418 F.3d 330, 344-45 (3d Cir.2005); *see also Matcon Diamond, Inc. v. Penn. Nat'l Ins. Co.,* 815 A.2d 1109, 1114 (Pa.Super.Ct.2003).

> FN6. Although Early makes this argument in his brief and, strangely, asserts via citation that his complaint and the transcript of oral argument before the District Court support the fact of such payments, Br. at 3, there are in fact no allegations regarding these payments in the complaint in this action. We decline to consider whether Early is entitled to any such premium payments that he may have made on his ex-wife's policy following his divorce, as that issue is not before us.

Moreover, assuming Early's policy is governed by ERISA, [FN7] the unambiguous language in this policy would lead to the same result. "[B]reach of contract principles, applied as a matter of federal law, govern claims for benefits due under an ERISA plan," *Hooven v. Exxon Mobil Corp.,* 465 F.3d 566, 572 (3d Cir.2006), and straightforward language in an ERISA plan document "should be given its natural meaning." *Bill Gray Enters., Inc. Employee Health & Welfare Plan v. Gourley,* 248 F.3d 206, 220 n. 13 (3d Cir.2001) (internal quotation marks and citations omitted). Likewise, to the extent that the doctrine of reasonable expectations applies under ERISA as a matter of federal common law, *see, e.g., Vitale v. Latrobe Area Hosp.,* 420 F.3d 278, 284 n. 4 (3d Cir.2005) (dicta); *Lifson v. INA Life Ins. Co. of New York,* 333 F.3d 349, 353 (2d Cir.2003), application of the reasonable expectations doctrine would require as a "predicate fact that the contract be ambiguous," as "[g]eneral ERISA principles simply do not permit us to re-write the terms of the insurance contract." *Pirkheim v. First Unum Life Ins.,* 229 F.3d 1008, 1011 (10th Cir.2000) (internal citation to Colorado case law and quotation marks omitted). We agree with the District Court that the language of the insurance contract was clear and unambiguous.

> FN7. Although U.S. Life's denial letter to Early appears to reference a procedure for further administrative review of his claim denial, the parties have not addressed whether Early has met any such requirement that may have existed as part of any plan. Exhaustion of plan remedies is required in claims to enforce the terms of an ERISA be-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                      Page 4
Slip Copy, 2007 WL 852363 (3rd Cir.(Pa.))
**(Cite as: 2007 WL 852363 (3rd Cir.(Pa.)))**

nefit plan. _D'Amico v. CBS Corp., 297 F.3d
287, 293 (3d Cir.2002)._

### III.

**\*3** For the foregoing reasons, we will affirm the judg-
ment of the District Court.

Slip Copy, 2007 WL 852363 (3rd Cir.(Pa.))

**Briefs and Other Related Documents (Back to top)**

• 05-4696 (Docket) (Oct. 28, 2005)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## CERTIFICATE OF SERVICE

I, Katherine J. Neikirk, hereby certify that on April 13, 2007, I caused **TriWest**

**Healthcare Alliance Corp.'s Reply Brief in Support of its Motion to Dismiss** and this

Certificate of Service to be filed with the Clerk of the Court using CM/ECF which will

send notification of such filing to the following counsel of record:

> Matt Neiderman, Esquire
> DUANE MORRIS LLP
> 1100 North Market Street, Suite 1200
> Wilmington, DE 19801
> mneiderman@duanemorris.com

Katherine J. Neikirk (#4129)