IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | ) | |
|---|---|---|
| LAKEWOOD HEALTH SYSTEM AND NORTHWEST MEDICAL CENTER, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) | Civil Action No. 07-69-GMS |
| TRIWEST HEALTHCARE ALLIANCE CORP., | ) ) ) ) | |
| Defendant. | ) ) | |

**TRIWEST HEALTHCARE ALLIANCE CORP.'S
SUPPLEMENTAL BRIEF IN RESPONSE TO THE
STATEMENT OF INTEREST OF THE UNITED STATES**

OF COUNSEL
Robert S. Ryland
Robert R. Gasaway
Ashley C. Parrish
Scott M. Abeles
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W., Suite 1200
Washington, D.C. 20005
Telephone: (202) 879-5000
Facsimile: (202) 879-5200

Lewis H. Lazarus (#2374)
Matthew F. Lintner (#4371)
Katherine J. Neikirk (#4129)
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, Delaware 19801-1494
Telephone: (302) 888-6800
Facsimile: (302) 571-1750
llazarus@morrisjames.com
mlintner@morrisjames.com
kneikirk@morrisjames.com

*Attorneys for Defendant
TriWest Healthcare Alliance Corp.*

Dated: October 12, 2007

## TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ...................................................................................................... ii

INTRODUCTION ...........................................................................................................................1

ARGUMENT....................................................................................................................................2

I.    THE SUBSTANTIVE AND PROCEDURAL POSITIONS TAKEN BY THE UNITED STATES CONFIRM THAT DISMISSAL IS IN ORDER...............................2

    A.    The Government's Interpretation Of Its Own Regulations Demonstrates That Plaintiffs' Claims Should Be Dismissed. .......................................................2

    B.    The Government's Interpretation Of Its Own Regulations Also Confirms That Plaintiffs Have Failed To Exhaust Their Administrative Remedies. ...............5

    C.    Because Plaintiffs Have Not Stated "Plausible" Claims For Relief, Their Complaint Should Be Dismissed. ...........................................................................7

II.    THE UNITED STATES' ARGUMENTS ON THE REAL PARTY IN INTEREST AND RULE 19 ISSUES ARE NEITHER ENTITLED TO DEFERENCE NOR CORRECT AS A MATTER OF LAW.............................................8

    A.    The Government's Interpretation Of The Rules Of Civil Procedure Are Entitled To No Deference. ........................................................................................8

    B.    The United States Is The Real Party In Interest.....................................................10

    C.    The United States Is A Necessary and Indispensable Party. .................................11

III.    THE GOVERNMENT'S STATEMENT OF INTEREST ALSO SUPPORTS TRIWEST'S ALTERNATIVE GROUNDS FOR DISMISSAL......................................13

CONCLUSION...............................................................................................................................15

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Acierno v. Preit-Rubin, Inc.,*
    199 F.R.D. 157 (D. Del. 2001) .................................................................................. 13

*Adams Fruit Co. v. Barrett,*
    494 U.S. 638 (1990) ............................................................................................... 8, 9

*Altoona Hosp. v. Thompson,*
    131 Fed. Appx. 355 (3d Cir. 2005) ........................................................................... 5

*Bamidele v. Immigration & Naturalization Serv.,*
    99 F.3d 557 (1996) .................................................................................................... 9

*Bell Atl. Corp. v. Twombly,*
    127 S. Ct. 1955 (2007) ........................................................................................... 7, 8

*Board of Trustees of Bay Med. Ctr. v. Humana Military Healthcare Servs., Inc.,*
    447 F.3d 1370 (Fed. Cir. 2006) ........................................................................... 10, 11

*Bowen v. Georgetown Univ. Hosp.,*
    488 U.S. 204 (1988) .................................................................................................. 9

*Bowles v. Seminole Rock & Sand Co.,*
    325 U.S. 410 (1945) ............................................................................................... 1, 4

*Drinkwater v. Metro. Life Ins. Co.,*
    846 F.2d 821 (1st Cir. 1988) .................................................................................... 6

*Harrow v. Prudential Ins. Co. of Am.,*
    279 F.3d 244 (3d Cir. 2002) ..................................................................................... 6

*Housing Auth. of Jersey City v. Jackson,*
    749 F. Supp. 622 (D.N.J. 1990) ............................................................................... 11

*In re Kaiser Aluminum Corp.,*
    456 F.3d 328 (3d Cir. 2006) ..................................................................................... 9

*McCowen v. Jamieson,*
    724 F.2d 1421 (9th Cir. 1984) ................................................................................ 13

*Mercy Home Health v. Leavitt,*
    436 F.3d 370 (3d Cir. 2006) ..................................................................................... 4

*Murphy Exploration & Prod. Co. v. U.S. Dept. of Interior*,
    252 F.3d 473 (D.C. Cir. 2001) ........................................................................... 9

*Pauley v. BethEnergy Mines, Inc.*,
    501 U.S. 680 (1991) ........................................................................................... 4

*Scafar Contracting, Inc. v. Sec'y of Labor*,
    325 F.3d 422 (3d Cir. 2003) ............................................................................... 9

*Smiley v. Citibank*,
    517 U.S. 735 (1996) ........................................................................................... 9

*Smith v. Office of Civilian Health and Med. Program of Uniformed Servs.*,
    97 F.3d 950 (7th Cir. 1996) ................................................................................ 4

*Spence v. Straw*,
    54 F.3d 196 (3d Cir. 1995) ................................................................................. 6

*Thomas Jefferson Univ. v. Shalala*,
    512 U.S. 504 (1994) ........................................................................................... 4

*Your Home Visiting Nurse Servs., Inc. v. Shalala*,
    525 U.S. 449 (1999) ........................................................................................... 5

**Statutes**

10 U.S.C. § 1079(n) ..................................................................................................... 14

29 U.S.C. § 1854 ........................................................................................................... 9

**Regulations**

32 C.F.R. § 199.14(a)(5) ......................................................................................... 4, 12

32 C.F.R. § 199.14(a)(5)(i)-(x) ..................................................................................... 4

32 C.F.R. § 199.17(a)(7) ............................................................................................. 13

32 C.F.R. § 199.2(b) ..................................................................................................... 2

# INTRODUCTION

In their complaint and in their opposition to TriWest's Motion to Dismiss, plaintiffs urged the Court to interpret their claims for payment under the TRICARE program in light of the government's "most recent guidance on the meaning of § 199.14(a)(5)," *i.e.*, the regulation that spells out how "facility charges" are to be reimbursed by TriWest as a contractor to the Department of Defense under the TRICARE program. *See e.g.*, Compl. ¶¶ 31, 33, 36, D.I. 1; Answering Brief of Plaintiffs in Opposition to Motion to Defendant's Motion to Dismiss ("Plfs' Br.") 9-10, D.I. 15. Plaintiffs claimed such "guidance" dictated that TriWest "must reimburse non-networking participating hospitals for facility charges relating to *all* outpatient services," even claims subject to the government's "maximum allowable charge." *See* Plfs' Br. 9.

To the extent there ever may have been a plausible basis for plaintiffs' lawsuit, that basis was obliterated by the Statement of Interest filed by the United States government on August 31, 2007. The Statement of Interest makes clear this lawsuit is premised on a fantastic notion that the government has blessed plaintiffs' attempt to reconfigure the TRICARE health benefit program to their advantage, by converting the carefully balanced system of capped payments into a free-for-all in which participating hospitals may name their own price for the services they provide to TRICARE beneficiaries regardless of the applicable rules.

In fact, the government's brief confirms that the motion to dismiss should be granted: Plaintiffs have willfully "misinterpreted" the government's regulations (Gov't Br. 2); plaintiffs have "misrepresented" to the Court the true nature of the government's interpretation of its regulations (*id.* at 17); and plaintiffs' arguments are "nonsens[e]." *Id.* at 15. The government's submission on behalf of the TRICARE Management Agency ("TMA"), the agency charged with promulgating, interpreting and implementing the TRICARE regulations, is entitled to "controlling weight." *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945).

Plaintiffs' case must therefore be dismissed based on the deference due the government's interpretation of the regulations governing its own health benefit program. This brief explains this point and otherwise responds to the views expressed in the government's August 31 submission and applies them to TriWest's pending Motion to Dismiss.

## ARGUMENT

### I.  THE SUBSTANTIVE AND PROCEDURAL POSITIONS TAKEN BY THE UNITED STATES CONFIRM THAT DISMISSAL IS IN ORDER.

The government's Statement of Interest establishes definitively that the entire basis for plaintiffs' complaint — their allegation that TriWest violated TRICARE regulations when paying claims submitted by the plaintiff hospitals — is frivolous, implausible and subject to outright dismissal under applicable legal standards. As the government's brief succinctly states, plaintiffs' interpretation of the regulatory requirements is simply "not correct." Gov't Br. 19, D.I. 22.

#### A.  The Government's Interpretation Of Its Own Regulations Demonstrates That Plaintiffs' Claims Should Be Dismissed.

The plaintiffs' case is founded on allegations that "there existed a contract implied-in-fact that claims submitted by Plaintiffs and by Class members would be paid by TriWest pursuant to and consistent with" (i) the TRICARE regulations, (ii) TMA's "longstanding policy," and (iii) government correspondence allegedly indicating "that Facility Charges duly submitted would be paid by TriWest in full as billed." Compl. ¶ 52. Plaintiffs admit that they have voluntarily become "participating providers" under the TRICARE program (*id.* ¶¶ 26-27), a status that requires them to "accept the CHAMPUS-allowable amounts as the maximum total charge for a service or item rendered to a CHAMPUS beneficiary...." 32 C.F.R. § 199.2(b) (this is known as the "CHAMPUS Maximum Allowable Charge" or "CMAC").

Plaintiffs also asserted that, "contrary to" TriWest's position, "TMA has not interpreted § 199.14(a)(5) in a manner that is inconsistent with Plaintiffs' claims, but rather has recently reiterated" that the TRICARE regulations governing maximum CHAMPUS payments require "facility charges to be paid 'as billed.'" Plfs' Br. 3. Indeed, the entire theory of plaintiffs' case is premised on the government's interpretation of its own TRICARE regulations. *See* Compl. ¶¶ 29-31, 52; Plfs' Br. 9-10.

It is therefore dispositive for purposes of the motion to dismiss that the government has made clear that plaintiffs' interpretation of the TRICARE regulations is simply wrong. Not only are plaintiffs' allegations "premised on a ***misinterpretation*** of the government's regulations," Gov't Br. 2, but plaintiffs' filings have also "***misrepresented*** the DOD's interpretation of DOD's own regulations." *Id.* at 17 (emphasis added). Plaintiffs' characterization of the payment rules "is not correct." *Id.* at 19. TRICARE "regulations and policies" do ***not*** "provide" the "additional payment[s]" for services that the plaintiffs seek to collect in this litigation. *Id.* at 23.

As the government's brief further explains, plaintiffs' complaint "leaves the impression" that, under the TRICARE program, hospitals are entitled to recover facility charges "as billed" ***in addition to*** the fixed, allowable charges specified for various categories of "hospital outpatient services." Gov't Br. 18-19; *see also* Plfs' Br. 8. The government, supporting TriWest's motion, disagrees with this attempt to mislead the Court, flatly stating that "[t]his is not correct." *See* Gov't Br. 19. As the government recognizes, plaintiffs "are not seeking payment for true 'facility charges'" that are properly payable under the TRICARE regulations; in fact, "the regulations do not provide for plaintiffs' 'Subject Claims' to be paid as billed." *Id.*

Moreover, the government explains that the "TRICARE regulations do ***not*** provide for payment of claims" in the "manner" that plaintiffs propose. *Id.* at 20 (emphasis added).

3

Although "services that do not have" a specified maximum allowable charge may be paid "as billed," if there is a specific, fixed allowable charge "for a given service," that charge "is the *only* compensation ... authorized under TRICARE's regulations and policies." *Id.* at 21-22 (emphasis added). The plaintiffs' contrary interpretation "would effectively eliminate 32 C.F.R. § 199.14(a)(5)(i)-(x), which lists outpatient services subject to CMACs." *Id.* at 22.

A government agency's interpretation of its own regulations is entitled to "substantial deference." *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994); *Mercy Home Health v. Leavitt*, 436 F.3d 370, 377 (3d Cir. 2006) (same). Even if several competing interpretations may exist, the agency's interpretation "must be given 'controlling weight unless it is plainly erroneous or inconsistent with the regulation.'" *Thomas Jefferson*, 512 U.S. at 512 (quoting *Seminole Rock*, 325 U.S. at 414). "Broad deference" is especially warranted if "the regulation concerns 'a complex and highly technical regulatory program,' in which the identification and classification of relevant 'criteria necessarily require significant expertise and entail the exercise of judgment grounded in policy concerns.'" *Id.* (quoting *Pauley v. BethEnergy Mines, Inc.*, 501 U.S. 680, 697 (1991)).

The TRICARE program is precisely the type of complex regulatory program for which the federal agency's interpretation of its own regulations is entitled to special deference. *See Smith v. Office of Civilian Health and Med. Program of Uniformed Servs.*, 97 F.3d 950, 955 (7th Cir. 1996) (reviewing CHAMPUS's denial of coverage to plaintiff under a "highly deferential" standard, "monitoring only for glaring mistakes-obvious wrongness"). In fact, the Third Circuit has deferred to agency interpretations in similar contexts involving reimbursements under the Medicare program. *See Mercy Home Health*, 436 F.3d at 377 (deferring to Secretary's construction of Medicare rules, where "broad deference is particularly appropriate"); *see also*

4

*Altoona Hosp. v. Thompson*, 131 Fed. Appx. 355, 357 (3d Cir. 2005) (upholding Secretary's construction of Social Security Act, regulations, and Reimbursement Manual).

In sum, plaintiffs' complaint asserts a theory that TriWest has violated TRICARE regulations by not paying plaintiffs a billed "facility" charge ***in addition to*** the CMAC-rate, which plaintiffs agreed to accept as full payment. Thus, the complaint must be dismissed, as its characterization of the TRICARE regulations is completely at odds with the interpretation of TMA, the agency responsible for promulgating, implementing and interpreting the regulations.

**B.    The Government's Interpretation Of Its Own Regulations Also Confirms That Plaintiffs Have Failed To Exhaust Their Administrative Remedies.**

The Court should also afford substantial deference to the government's considered judgment that plaintiffs' claims "could be and should be" addressed through its administrative appeals process. *See, e.g., Your Home Visiting Nurse Servs., Inc. v. Shalala*, 525 U.S. 449, 453 (1999). Plaintiffs have asserted that administrative exhaustion is "clearly inappropriate" because they believe that their "dispute with [TriWest] is a 'non-appealable' issue that could not have been resolved in the TRICARE administrative appeals process." Plfs' Br. 30. But, here again, the government's submission demonstrates that plaintiffs are wrong. As the government pointedly notes, "the real issue that underlies plaintiffs' Complaint … is an issue that could be and should be raised through the TRICARE administrative appeals process." Gov't Br. 15. Indeed, the government further confirms that plaintiffs' interpretation regarding which claims qualify as posing "non-appealable" issues is "nonsensical" and "not correct." *Id*. Similarly, the government confirms that plaintiffs' suggestion that "any effort to resolve these issues as part of administrative proceedings would be futile … is also incorrect." *Id*. at 16.

Plaintiffs offer no reason for allowing them to bypass the administrative process established by TRICARE regulations for resolving their claims for higher levels of payment.

Instead, it is obvious that plaintiffs have framed their dispute with the government's regulations in the form of "implied contract" and "quasi-contract" claims against a private party to circumvent exhaustion requirements. Yet plaintiffs' common law claims are premised upon and equate to no more than TriWest's duty to adhere to TRICARE regulations. *See* Compl. ¶ 55 ("TriWest's failure to so reimburse the Plaintiffs" according to regulations "constitutes a breach of contract implied-in-fact") (Count I); *id.* ¶ 59 ("TriWest failed to pay, and continues to fail to pay the Facility Charges for the Subject Claims.") (Count II); *id.* ¶ 30 (defining the "Facility Charges" claims in the complaint as based on federal regulatory definitions).

Therefore, given their failure to exhaust administrative remedies, plaintiffs' state law claims in this Court must fail because "it would be anomalous to permit a litigant to avoid that remedial scheme by simply asserting an independent [] claim premised upon the same facts." *Spence v. Straw*, 54 F.3d 196, 203 (3d Cir. 1995) (citations omitted) (permitting a party to avoid a mandatory exhaustion requirement "by challenging the same conduct under another provision of law must fail because it would 'allow [Congress's] careful and thorough remedial scheme to be circumvented by artful pleading'"). *See also* Gov't Br. 14-17; TriWest Op. Br. 29-36, D.I. 15.

Third Circuit precedent requires the Court to close the door on such attempts at "artful pleading." *Harrow v. Prudential Ins. Co. of Am.*, 279 F.3d 244, 253 (3d Cir. 2002) ("[p]laintiffs cannot circumvent the exhaustion requirement by artfully pleading benefit claims as breach of fiduciary duty claims"). Therefore, the Court should block this attempt to end-run the TRICARE claims adjudication process and prevent TMA's administrative procedure from being "rendered meaningless" by "artfully dressing" exhaustible claims in the guise of non-exhaustible claims. *Id.* (quoting *Drinkwater v. Metro. Life Ins. Co.*, 846 F.2d 821, 826 (1st Cir. 1988)).

### C. Because Plaintiffs Have Not Stated "Plausible" Claims For Relief, Their Complaint Should Be Dismissed.

The government's brief confirms that plaintiffs' complaint must be dismissed because it fails to state any plausible claims for relief. As the Supreme Court emphasized in a decision issued May 18, 2007 (after the close of briefing on the motion to dismiss), plaintiffs must do more than merely allege a contract theory, they must set forth specific facts supporting "plausible grounds to infer an agreement." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007). To meet that standard, plaintiffs were required to allege "enough factual matter (taken as true) to suggest" that TriWest breached a contractual duty owed to plaintiff or was unjustly enriched by its actions. *Id.*

As the government's brief underscores, plaintiffs have failed to satisfy this basic obligation. Even assuming TriWest refused to pay "outpatient charges" submitted by plaintiff hospitals on an "as billed" basis, such behavior by TriWest would be as consistent with lawful behavior as it would be with unlawful behavior, because the vast majority of outpatient charges are required, by law, ***not*** to be paid as billed. *See* Gov't Br. 16, 19-20. Plaintiffs have failed to allege or, after substantial prompting, to ***argue*** that they alleged that they submitted even one "facility charge" (versus a claim for outpatient services not denominated as a "facility charge") for which TriWest denied payment. This plainly shows that while their theory may be "conceivable," it fails to state "enough facts to state a claim to relief that is plausible on its face." *Twombly,* 127 S. Ct. at 1974; *see also* Gov't Br. at 16 (noting failure to allege submission of facility charges for payment); *id.* at 19 ("[p]laintiffs are not seeking payment for true 'facility charges'"). At best, plaintiffs have alleged a hypothetical injury.

In such circumstances, dismissal is appropriate. *Twombly* set the standard for what is required to "give the defendant fair notice of what the ... claim is and the grounds upon which it

7

rests." *Twombly*, 127 S. Ct. at 1964. In *Twombly*, the Supreme Court held that factual allegations that were as "consistent with conspiracy" as with "a wide swath of rational and competitive business strategy" failed to state a claim. *Id.* Given the problems of discovery abuse, and the dangers of allowing "largely groundless claim[s]" to waste resources and pressure settlement, the Court should screen out abusive litigation and require plaintiffs to plead plausible allegations showing that defendants have engaged in wrongful conduct. *Id.* At 1966.

II. **THE UNITED STATES' ARGUMENTS ON THE REAL PARTY IN INTEREST AND RULE 19 ISSUES ARE NEITHER ENTITLED TO DEFERENCE NOR CORRECT AS A MATTER OF LAW.**

Although it agrees that plaintiffs' claims are meritless, the government argues at length that it is neither a "real party in interest" nor a necessary or indispensable party to these proceedings. It is, of course, not surprising that the government is reluctant to subject itself to the burdens of frivolous litigation. The Court should recognize, however, that the government's view on these issues — whether the Court lacks jurisdiction and whether the requirements of Rule 19 are satisfied —is *not* entitled to *any* deference, unlike the government's interpretation of its own regulations. In any event, the government's position is incorrect as a matter of law.

Because plaintiffs are seeking to require TriWest to comply with plaintiffs' interpretation of the government's TRICARE regulations, plaintiffs are inevitably asking the Court to decide how the government should enforce its own regulations. Plaintiffs' dispute is therefore with the government, not with TriWest. To conclude otherwise would require the Court to elevate form over substance, an approach at odds with Rule 19 and the "real party" doctrine.

A. **The Government's Interpretation Of The Rules Of Civil Procedure Are Entitled To No Deference.**

The degree of deference owed, if any, to an agency's administrative interpretation depends on a Congressional delegation of authority to the agency. *See Adams Fruit Co. v.*

8

*Barrett*, 494 U.S. 638, 649-50 (1990) ("it is fundamental that an agency may not bootstrap itself into an area in which it has no delegation") (quotation omitted), *superceded by* 29 U.S.C. § 1854. Unless an agency is the "recipient of congressionally delegated power, there is no reason to defer to its interpretations." *Murphy Exploration & Prod. Co. v. U.S. Dept. of Interior*, 252 F.3d 473, 478-79 (D.C. Cir. 2001); *see also In re Kaiser Aluminum Corp.*, 456 F.3d 328, 344-45 (3d Cir. 2006) ("Where Congress delegates to the courts, rather than administrative agencies, the power to make determinations under a statute, deference does not apply."); *Scafar Contracting, Inc. v. Sec'y of Labor*, 325 F.3d 422, 423 (3d Cir. 2003).

Needless to say, although Congress delegated broad powers to TMA to promulgate, interpret, and enforce duly-enacted TRICARE regulations, Congress granted neither TMA nor the Department of Justice authority over this Court's jurisdiction or the Federal Rules of Civil Procedure. Accordingly, while the government's interpretation of TRICARE regulations is entitled to "substantial deference," no such deference is due the government's self-interested arguments regarding its status as a real, necessary or indispensable party. Because such arguments merely reflect the "agency's convenient litigating position," deference would be "entirely inappropriate." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 213 (1988); *Smiley v. Citibank*, 517 U.S. 735, 741 (1996) (the "deliberateness" and "authoritativeness" of an agency's litigation position that is "unsupported by regulations, rulings or administrative practice" are "suspect"); *Bamidele v. Immigration & Naturalization Serv.*, 99 F.3d 557, 561 (1996) (no "presumption of special expertise" is granted to the agency's interpretation of "a clearly legal issue that courts are better equipped to handle"). The government's status in this litigation must therefore rise or fall on the ***merits*** of the arguments, not on the ***identity of the***

9

*party* proffering them. As set forth below, the government's arguments do not withstand scrutiny.

### B. The United States Is The Real Party In Interest.

The government's assertion that it is not the real party in interest overlooks the allegations in plaintiffs' complaint and misreads the Federal Circuit's decision in *Board of Trustees of Bay Medical Center v. Humana Military Healthcare Servs., Inc.*, 447 F.3d 1370, 1374 (Fed. Cir. 2006).

Plaintiffs seek federal appropriated funds allegedly owed to them under the federal regulations, *see, e.g.,* Compl. ¶ 9, and assert that TriWest breached a supposed implied-in-fact contract to pay claims in accordance with those regulations and TMA's interpretation of those regulations. *See* Compl. ¶¶ 28-34, 52. Because the *only* term of the supposed contract is that TriWest must comply with regulatory requirements, there are no terms *independent* of the TRICARE regulations. *See* Compl. ¶¶ 8, 9, 52. The government's suggestion that plaintiffs have alleged "an implied term that differs from the statutory rate at which TRICARE reimburses MCS contractors," underscores that the government misunderstands the fundamental nature of plaintiffs' claims. Gov't Br. 7 n.2. In fact, plaintiffs' "implied contract" is wholly *dependent* upon and *coextensive* with TriWest's obligations under the TRICARE program. *See* Compl. ¶¶ 8, 9, 52; *see also* TriWest Op. Br. 37-38 (citing authority). The Court therefore cannot rule in plaintiffs' favor without also finding that the government has misinterpreted and misapplied its own regulations.

Plaintiffs' claims here are different from the claims addressed in the *Bay Medical* case. In *Bay Medical*, the defendant expressly agreed to pay the hospitals at a rate *higher* than the government's CMAC-capped rates. In other words, although the TMA reimbursed Humana at CMAC rates, Humana (by private contract) agreed to reimburse the hospitals at rates that were

established by the parties independently of the TRICARE regulations. Because Humana's contractual obligations were independent from its obligations under the TRICARE regulations, the court concluded that government was not a "real party." *Bay Med. Ctr.*, 447 F.3d at 1374.

Here, in contrast, plaintiffs allege that its supposed "implied contract" requires TriWest to pay nothing more than what TriWest was required to pay under the TRICARE regulations. *See* Compl. ¶ 52. If plaintiffs prevail, TriWest will be forced to claim additional federal funds to pay the higher amounts demanded by plaintiffs' based on their interpretation of the regulations, and ***the government will use federal funds to reimburse TriWest at those higher rates***, according to both the "implied" contract between plaintiffs and TriWest and the "express" contract between the government and TriWest. *See* Gov't Br. 11 ("DoD reimburses the contractors for their payments of the government's cost-share on allowable amounts for health care claims processed"). Thus, while plaintiffs argue that TriWest is "at risk" for the payment of health care claims (Plfs' Br. 22), the government has confirmed that "plaintiffs' allegation that the [TRICARE] contract is a true 'at risk' contract is in error." Gov't Br. 11.

For these reasons, the government is the real party in interest and the Court, therefore, lacks jurisdiction. Accordingly, dismissal is required under Rule 12(b)(1). *See* Gov't Br. 9 ("As a practical matter ... if the United States were the real party in interest this Complaint would have to be dismissed because this Court would lack jurisdiction."). *See also* TriWest Br. 21-22.

### C.  The United States Is A Necessary and Indispensable Party.

The government also argues that it is not a necessary or indispensable party under Rule 19. *See* Gov't Br. 10 n.4, 18, 20-23; *but see Housing Auth. of Jersey City v. Jackson*, 749 F. Supp. 622, 627-28 (D.N.J. 1990) (HUD Secretary was a necessary party notwithstanding his arguments to the contrary). The controlling point is not the government's interpretation of the Federal Rules of Civil Procedure, but rather whether the importance of the government's

interpretation of its TRICARE regulations to the proper adjudication of this case makes the government a necessary and indispensable party.

TriWest has argued that the government is a necessary and indispensable party because the relief sought by plaintiffs would (i) require the Court to order TriWest to pay the claims in a manner at odds with TMA directives, and/or (ii) require the TMA to change its interpretation of its regulations. *See* TriWest Op. Br. 23-24. In response, plaintiffs have claimed that "[b]ecause TMA has not interpreted § 199.14(a)(5) to mean anything other than that facility charges related to outpatient services must be paid 'as billed' by hospitals, each of Defendant's justifications for why the United States is a necessary party to this suit must be rejected." Plfs' Br. 25. Now, however, the Court has a record of the government's unequivocal statement that its regulations do ***not*** allow for the payment of a facility charge in addition to a CMAC allowable charge for the same service. *See* Gov't Br. 10 n.4, 21 ("when there is a CMAC, … no other charges for the same service are payable by TRICARE"); *id.* at 17-23 (explaining that TriWest cannot pay plaintiffs' claims as requested under governing law).

The government nonetheless argues it is not a necessary or indispensable party because its interests would not be impaired and TriWest would not be subject to "inconsistent obligations." Gov't Br. 11-12. But these assertions ignore the reality of plaintiffs' claims. The alleged implied-in-fact contract is an alleged agreement for TriWest to comply with government's regulations. Hence, if plaintiffs prevail, the Court would necessarily have to order TriWest to pay claims in a manner contrary to the government's interpretation of its own regulations. *See* TriWest Op. Br. 24. In other words, this Court would effectively displace the TMA's control over the TRICARE program and, henceforth, TRICARE providers (like TriWest) would have to look to the courts, not TMA, for the interpretation of TMA's payment rules.

In the end, the government is unquestionably a necessary and indispensable party because its presence is required to defend and save the TRICARE program from the disastrous implications of plaintiffs' claims. The government implicitly acknowledges this problem, stating that "[i]f plaintiffs were correct … the entire system of CMACs could effectively be circumvented." Gov't Br. 22. The plaintiffs' claims, if permitted to go forward, would mean that lawsuits aimed at recovering bonus payments from the federal treasury via private contractors could substitute for straight-ahead challenges to government regulations under the Administrative Procedures Act in proper judicial fora. This is precisely the type of indirect challenge that Rule 19 is intended to prevent. *See, e.g., McCowen v. Jamieson*, 724 F.2d 1421, 1423 (9th Cir. 1984); *Acierno v. Preit-Rubin, Inc.*, 199 F.R.D. 157, 164 (D. Del. 2001).

### III. THE GOVERNMENT'S STATEMENT OF INTEREST ALSO SUPPORTS TRIWEST'S ALTERNATIVE GROUNDS FOR DISMISSAL.

TriWest outlined additional grounds for dismissal in its earlier filings. These additional grounds are also supported by the government's Statement of Interest. For example, as TriWest has explained, the "deliberately expansive" preemption provision under TRICARE expressly bars plaintiffs' claims. *See* TriWest Reply Br. 8, D.I. 16; *see also* TriWest Op. Br. 15-19. Plaintiffs have offered only meek resistance to preemption, resting their argument largely on the absence of a similar argument in randomly-selected cases and on the hope that the Court will overlook the statute's clarifying and implementing regulations. *See* Plfs' Br. 14-15. Those regulations show that preemption of laws relating to "*any* State or local law *relating to* health insurance" is "necessary to achieve important Federal interests, including … uniform national health programs … and the operation of such programs at the lowest possible cost to" the government. 32 C.F.R. § 199.17(a)(7)(i)-(ii) (emphasis added). Although the government does not directly address the preemption issue, its Statement of Interest demonstrates that permitting

plaintiffs' claims to move forward would directly interfere with federal interests, including the goal of providing benefits while controlling costs in a multi-billion dollar health benefit program. *See* Gov't Br. 22 ("If plaintiffs were correct … then the entire system of CMAC's could effectively be circumvented."). *See also* 10 U.S.C. § 1079(n) (authorizing DoD to enter into contracts to obtain health care services on a "discounted basis").

The government's submission also supports TriWest's assertion of Rule 12(b)(6) as an additional ground for dismissal on the basis that plaintiffs cannot state a claim for breach of implied contract or unjust enrichment. *See* TriWest Op. Br. 36-40; TriWest Reply Br. 18-20. Although the government does not mention Rule 12(b)(6), its Statement of Interest confirms that dismissal is warranted on this basis as well. For example, in recognizing that the "real issue" is whether TriWest paid plaintiffs' claims according to the federal regulations, the government confirms that plaintiffs' common law claims are mere stand-ins for claims that TriWest allegedly is not complying with its obligations as a CHAMPUS contractor. Gov't Br. 15. Likewise, in identifying the "underlying issues" as "whether plaintiffs' incurred charges fall within the definition of facility charges and whether plaintiffs properly claimed those charges," the government spotlights that whether TriWest and the plaintiffs had implied contracts or quasi-contracts between them is irrelevant. As TriWest has already demonstrated, a pre-existing duty to follow federal law cannot give rise to an implied-in-fact contract. *See* TriWest Op. Br. 37-39. Accepting the complaint's allegations as true, if plaintiffs were to properly claim and submit "facility charges" for payment in accord with TMA regulations, TriWest is required to pay those claims "as billed" *regardless* of any supposed "implied contract" with the plaintiff hospitals, rendering plaintiffs' breach claims a nullity.

Finally, even if the positions taken by the government were not sufficient to warrant dismissing the plaintiffs' claims outright, TriWest has asked the Court to refer any factual or legal matter to TMA under the doctrine of primary jurisdiction. TriWest Op. Br. 28-29; TriWest Reply Br. 15-16. Such a referral would be particularly appropriate here, given the government's substantial interest in the case (embodied both by its request to defer resolution of the motion to dismiss until it could file its Statement of Interest, and the Statement of Interest itself), its expertise in adjudicating similar disputes, the harms TriWest would suffer if it were required to defend against plaintiffs' groundless claims, and the damage to the TRICARE health care program if plaintiffs' claims were accepted.

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in briefing previously submitted to the Court, the plaintiffs' complaint should be dismissed with prejudice.

Respectfully submitted,

OF COUNSEL

Robert S. Ryland
Robert R. Gasaway
Ashley C. Parrish
Scott M. Abeles
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W., Suite 1200
Washington, D.C. 20005
Telephone: (202) 879-5000
Facsimile: (202) 879-5200

Lewis H. Lazarus (#2374)
Matthew F. Lintner (#4371)
Katherine J. Neikirk (#4129)
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, Delaware 19801-1494
Telephone: (302) 888-6800
Facsimile: (302) 571-1750
llazarus@morrisjames.com
mlintner@morrisjames.com
kneikirk@morrisjames.com

*Attorneys for Defendant
TriWest Healthcare Alliance Corp.*

Dated: October 12, 2007

**CERTIFICATE OF SERVICE**

I, Katherine J. Neikirk, hereby certify that on October 12, 2007, I caused TriWest Healthcare Alliance Corp.'s Supplemental Brief in Response to the Statement of Interest of the United States and this Certificate of Service to be filed with the Clerk of the Court using CM/ECF which will send notification of such filing to the following counsel of record:

>Matt Neiderman, Esquire
>DUANE MORRIS LLP
>1100 North Market Street, Suite 1200
>Wilmington, DE 19801
>mneiderman@duanemorris.com

_____
Katherine J. Neikirk (#4129)

1623007