# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LAKEWOOD HEALTH SYSTEM AND NORTHWEST MEDICAL CENTER, *for themselves and on behalf of all other similarly situated class members,* : : : : : : Plaintiffs, : : v. : : TRIWEST HEALTHCARE ALLIANCE CORP., : : : Defendant. : : | Civil Action No. 07-69 (GMS)<br><br>JURY TRIAL DEMANDED<br><br>CLASS ACTION |

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFFS' RESPONSE TO THE STATEMENT OF INTEREST OF THE UNITED STATES

*OF COUNSEL*
John J. Soroko
Seth A. Goldberg
DUANE MORRIS LLP
30 South 17th St.
Philadelphia, PA 19103
215.979.1000
215.979.1020 *fax*

Michael R. Gottfried
Patricia R. Rich
DUANE MORRIS LLP
470 Atlantic Avenue, Suite 500
Boston, MA 02210
857.488.4200
857.488.4201 *fax*

Matt Neiderman (Del. Bar No. 4018)
DUANE MORRIS LLP
1100 N. Market St., Suite 1200
Wilmington, Delaware 19801
302.657.4900
302.657.4901 *fax*
mneiderman@duanemorris.com

Gregory A. Brodek
DUANE MORRIS LLP
88 Hammond Street, Suite 500
Bangor, ME 04401
207.262.5400
207.262.5401 *fax*
gabrodek@duanemorris.com

*Attorneys for Plaintiffs Lakewood Health System*
*and Northwest Medical Center, for themselves and*
*on behalf of all other similarly situated class members*

## **INTRODUCTION**

In its Response to the Statement of Interest filed by the United States ("Defendant's Response") (D.I. 27), Defendant continues to argue for dismissal based upon the mistaken assumption that the issue before the Court is an "appealable" issue under the TRICARE regulations, which it is not, and that the TRICARE administrative appeal process is mandatory, which it is not. In actuality, as addressed in Plaintiffs' Response to the Statement of Interest ("Plaintiffs' Response") (D.I. 26), and further discussed here, Plaintiffs' claims do not require a "complex and highly technical" regulatory interpretation, but rather turn on a basic and logical reading of the plain language of 32 C.F.R § 199.14(a)(5)(xi), which indisputably requires reimbursement of "Facility Charges" "as billed." Thus, Plaintiffs' claims are well within the province of this Court. Indeed, because Plaintiffs' claims turn on a "requirement of the law," they are not "appealable" under the TRICARE administrative appeals process and, even if they were, the United States has itself conceded, in its Statement of Interest ("SOI") (D.I. 22), that the TRICARE administrative appeal process is permissive, not mandatory.[1]

---

[1] The issue of whether the United States is the real party in interest or whether it is a necessary or indispensable party has been fully briefed by the parties, and Plaintiffs incorporate herein the arguments they have previously made. Accordingly, the Plaintiffs will not repeat these arguments, except to note that in responding to the SOI, Defendant has not raised any new arguments that could somehow defeat the firm position of the United States that it is not the real party in interest or a necessary or indispensable party.

1

## ARGUMENT

I. **PLAINTIFFS SHOULD NOT BE REQUIRED TO EXHAUST ADMINISTRATIVE REMEDIES BECAUSE THE TRICARE ADMINISTRATIVE APPEALS PROCESS IS NOT MANDATORY**

In the first instance, Plaintiffs' claims are "non-appealable" under 32 C.F.R. § 199.10 because they amount to a "dispute regarding a requirement of the law or regulation" and therefore could not have been appealed under that regulation. *See* Answering Brief of Plaintiffs In Opposition to Defendant's Motion to Dismiss at 31-33 (D.I. 15); Plaintiffs' Response at 5-6.

However, even if Plaintiffs' claims were "appealable" under 32 C.F.R. § 199.10, such appeals are *not mandatory* because the TRICARE regulations contain no exhaustion "requirement." *See* 32 C.F.R. § 199.10; *see also*, *I.M. Hofman v. Hammack, et al.*, 82 F.Supp.2d 898, 900 (N.D. Ill. 2000) ("the CHAMPUS enabling statutes and regulations do not prescribe administrative appeals"). Nor does the Plaintiffs' action, as Defendant contends, render the so-called "comprehensive" nature of the TRICARE appeal process "meaningless." If exhaustion was required, the regulation would have expressly so stated.

The exhaustion analysis would be different if the TRICARE appeal process were mandatory. *See e.g., Ghana v. Holland*, 226 F.3d 175, 177 (3d Cir. 2000) (exhaustion *requirement* contained in § 803 of the Prison Litigation Reform Act and codified at 42 U.S.C. § 1997e(a) mandated dismissal of the plaintiff's complaint for failure to exhaust administrative remedies) (emphasis added). However, as the Third Circuit has previously held, the absence of any exhaustion *requirement* in the statutory language at issue weighs heavily on, and may be dispositive of, the question of whether a Court should require exhaustion:

> Because we find that the statutory language at issue in this case suggests that exhaustion is not required, we decline to exercise whatever "sound judicial discretion" we may have to impose such a requirement.

*Nickeo v. Virgin Islands Tel. Corp.*, 42 F.3d 804, 808 n.3 (3d Cir. 1994) ("*Nickeo*").

Significantly, none of the cases cited by Defendant are controlling on the facts presented here and, in actuality, each *supports Plaintiffs' argument*. In *Your Home Visiting Nurs. Servs., Inc. v. Shalala*, 525 U.S. 449, 453 (1999) ("*Your Home*"), a case upon which Defendant principally relies, the statute at issue expressly required exhaustion prior to filing a judicial action, unlike the permissive statute at issue here.

Moreover, *Harrow v. Prudential Ins. Co. of Am.*, 279 F.3d 244, 253 (3d Cir. 2002), which concerned exhaustion under ERISA, is inapplicable here because the Third Circuit, in *Metro. Life Ins. Co. v. Price*, 2007 U.S. App. LEXIS 21076 (C.A No. 05-2927) (3d Cir., Sept. 4, 2007) ("*Metro Life*"), recognized that ERISA does not contain an exhaustion requirement. *Metro. Life*, 2007 U.S. App. LEXIS 21076 at 18-19 ("Congress has expressly provided for jurisdiction over ERISA cases in 29 U.S.C. § 1132(e). Neither that provision nor any other part of ERISA contains an exhaustion requirement. Thus, as a judicially-crafted doctrine, exhaustion places no limits on a court's adjudicatory power.")

None of the cases cited by the Defendant stand for the proposition that where, as here, the regulation does not require exhaustion of administrative remedies, the Court should nonetheless require exhaustion. To the contrary, where the administrative appeals process is not mandatory, the Third Circuit has not required it, or at least "decline[d] to exercise whatever 'sound judicial discretion' [it] may have."[2] *Nickeo*, 42 F.3d at 808 n.3. Accordingly, because the TRICARE

---

[2] Here, as described throughout Plaintiffs' briefing in response to Defendant's Motion to Dismiss and the SOI, the factors bearing on the Court's discretion all weigh against requiring Plaintiffs to exhaust administrative remedies under the TRICARE administrative appeal process: (1) exhaustion would be futile because Plaintiffs have raised their dispute with Defendant a number of times over the course of three years to no avail; (2) exhaustion would result in unnecessary delay because Plaintiffs would be required to appeal thousands of Subject Claims all of which
(Continued…)

administrative appeals process is *permissive*, *not mandatory*, the Court should not dismiss Plaintiffs' claims for a purported failure to exhaust administrative remedies that are not expressly required by statute.

## II. THE *TWOMBLY* CASE PROVIDES NO SUPPORT FOR THE DEFENDANT'S POSITION.

The Defendant's reliance on *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955 (2007) ("*Twombly*") is misplaced. Unlike this case, the *Twombly* case concerned "the proper standard for pleading an antitrust conspiracy through allegations of parallel conduct." *See* 127 S.Ct. at 1963. Here there is no conspiracy pled nor are there imprecise allegations asserted against numerous defendants. Moreover, the "agreement" at issue in *Twombly* was the alleged agreement to conspire—not an implied contract between two parties. Here, the Plaintiffs' allegations meet the *Twombly* pleading standard. As set forth in its Answering Brief of Plaintiffs in Opposition to Defendant's Motion to Dismiss at 9-19 ("Plaintiffs' Answering Brief") (D.I. 15), the Plaintiffs' complaint does "'give the defendant fair notice of what the claim is and the grounds upon which it rests,'" which are not mere "labels and conclusions, [or] a formulaic recitation of the elements of a cause of action." 127 S.Ct. at 1964-1965 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Indeed, the allegations of the Complaint do set forth specific

---

(Continued…)

were not properly reimbursed as a result of the same uniform conduct, and (3) Defendant's uniform conduct has resulted in a violation of Plaintiffs' regulatory right to reimbursement for the Facility Charges relating to the Subject Claims. *See Holton v. Blue Cross Blue Shield of South Carolina*, 56 F. Supp. 2d 1347, 1353 (M.D. Ala. 1999) (court's discretion to require exhaustion requires analysis of whether (1) exhaustion is futile; (2) the claim will clearly be denied or administrative action will not resolve the merits of the claim; (3) the administrative remedy is inadequate because it does not exist, or would unreasonably delay the action; or (4) the challenged agency action involves a clear and unambiguous violation of statutory rights or constitution rights) (D.I. 32 at 8-9).

facts supporting "plausible grounds to infer an agreement" between Plaintiffs and TriWest, specifically including each of the elements of an implied contract. *See* Plaintiffs' Answering Brief at 9-19. Moreover, Defendant's argument that the Plaintiffs have failed to allege that they submitted Facility Charges ignores the allegations that Plaintiffs "duly" billed for outpatient services, including Facility Charges, which claims were denied. (Compl., ¶¶ 7, 33, 35, 40, 53, 54). As such, Plaintiffs' Complaint does not run afoul of the *Twombly* pleading requirements.

### III. THIS CASE TURNS ON THE APPLICATION OF THE REGULATION PROVIDING FOR PAYMENT OF FACILITY CHARGES TO PLAINTIFFS' CLAIMS, WHICH APPLICATION DOES NOT REQUIRE TMA'S GUIDANCE

Despite Defendant's attempt to portray this case as an incredibly complex matter requiring the insight of TRICARE Management Activity ("TMA"), the question before the Court is simple—Has Defendant's failure to reimburse Plaintiffs the Facility Charges on the Subject Claims resulted in a breach of contract and/or unjust enrichment?[3] While it is true that Plaintiffs' right to reimbursement derives from 32 CFR §199.14(a)(5)(xi), the issue before the Court is not complex, and does not require TMA's guidance. Rather, it requires only the application of the regulation to the Subject Claims, which, as set forth below, is not a complex matter.[4]

---

[3] Defendant's assertion that the SOI supports its argument that Plaintiffs' claims are preempted completely distorts the SOI. Defendant's Response at 13-14. The SOI does not address Defendant's preemption or primary jurisdiction arguments, and completely rejects Defendant's arguments that the United States is the real party in interest or is an indispensable party. Indeed, the United States makes clear that federal interests are not at stake here because: (1) "the complaint does not challenge any TRICARE regulation or present any claim against the United States;" (2) "Plaintiffs are not seeking any additional payment from the United States based on the TRICARE regulations;" and (3) "should the Court ultimately award Plaintiffs money damages in this case, defendant alone would be liable on that judgment." SOI at 4, 6, and 8.

[4] Although Plaintiffs have previewed for the Court the merits of their claims, it is premature to determine the merits at the motion to dismiss stage.

5

### 1. What Are Facility Charges?

In order to provide outpatient services to patients, Plaintiffs incur an array of expenses including, but not limited to, building costs; staffing costs; supplies; and general, miscellaneous overhead costs. These costs are referred to as "Facility Charges." *See* 32 C.F.R. § 199.2(b) To fairly distribute these Facility Charges to patients utilizing Plaintiffs' facilities, each Plaintiff allocates a small portion of these Facility Charges to each of the procedures performed at their respective facility. These Facility Charges are then billed by Plaintiffs when they bill for services provided at their hospital. For example, if a patient goes to a hospital on an outpatient basis to receive an X-ray and have some laboratory work performed, a portion of the hospital's Facility Charges are allocated to providing the X-ray, and a portion of the hospital's Facility Charges are allocated to the laboratory services provided. When the hospital bills the patient, or his/her insurance company, the hospital completes a Form UB-92, referencing the services rendered (i.e., the X-ray services and laboratory services), and the costs, or Facility Charges, associated with and billed for the services rendered.

### 2. Facility Charges Are Not Assigned A "CHAMPUS Maximum Allowable Charge"

Under the TRICARE regulations, certain services or charges are assigned a "CHAMPUS Maximum Allowable Charge" ("CMAC"), which is a reimbursement rate set by TRICARE. Other services or charges that are not assigned a CMAC are paid as billed. As the United States makes clear in the SOI, Facility Charges are just such a charge – they are not assigned a CMAC. *See* SOI at 17.

      3.      <u>Because Facility Charges Have Not Been Assigned A CMAC, They Are Paid "As Billed"</u>

As Plaintiffs, Defendant, and the United States acknowledge, the TRICARE regulations, specifically 32 C.F.R. 199.14(a)(5)(xi), provide that "TRICARE payments for hospital outpatient ***Facility Charges*** that would include the costs of providing the outpatient service would be ***paid as billed***." *Id*. (emphasis added). Accordingly, there is no dispute among Plaintiffs and the United States that the Facility Charges claimed by Plaintiffs are to be paid "as billed" and that such Facility Charges are charges that are different from and, in fact, "in addition to," charges that are reimbursed at CMAC. *See* SOI at 16 (stating "there is no dispute that 'facility charges' are paid as billed").

Simply put, the United States has confirmed Plaintiffs' position that, with respect to the Subject Claims, (1) a fee for "Facilities Charges" is payable to Plaintiffs, as dictated by 32 C.F.R. § 199.14(a)(5)(xi), and (2) this fee is *in addition* to any payments that are made under 32 C.F.R. § 199.14(a)(5)(i)-(x) (*i.e.*, CMAC payments):

> Under DoD regulations, when there is a CMAC, that is the maximum amount TRICARE can pay for that *claimed service*; no other charges for the *same service* are payable by TRICARE. TRICARE can pay a facility charge, *in addition*, but that facility charge is not the difference between the billed amount for a service covered by a CMAC and the CMAC, but a *separate charge* to cover the use of the facilities, which is to compensate the hospital for its overhead, non-professional staff, depreciation, etc.

SOI at 21 (emphasis added) (citation omitted). Indeed, even Defendant is forced to concede that "services without allowable charges" must pursuant to 32 C.F.R. § 199.14(a)(5)(xi), "be paid as billed." Defendant's Response at 4.

    4.    <u>Plaintiffs Have Properly Billed, And Are Entitled To Payment, For Their Facility Charges</u>

Realizing the unavoidable conclusion that is reached by applying the regulations to the Subject Claims, the Defendant attempts, by taking quotes from the SOI out of context, to obfuscate the matter by suggesting that the Plaintiffs did not bill correctly for the charges at issue, or that some "true facility charges" concept should carry the day.[5]  However, Defendant's position is contrary to the plain language of the regulations, and therefore fails.

Plaintiffs have properly alleged that they "duly" billed for their Facility Charges and, at this stage, the analysis should stop there.  *See* Compl. ¶ 32.  However, even if one moves beyond the four corners of the Complaint, Defendant's argument that Plaintiffs failed to appropriately bill for "Facility Charges," still fails because it is completely meritless.  As explained in Plaintiffs' Response, there simply is no way to separately bill for Facility Charges associated with the Subject Claims other than in the manner done by Plaintiffs, *i.e.*, by referencing on the UB-92 the service performed, the applicable revenue code and procedure code, and the total costs, or the Facility Charges, associated with the service rendered.  Subsection 199(a)(5)(xi) recognizes this billing reality when it describes facility charges as the "*cost* of providing the outpatient service...." (emphasis added).  *See* Plaintiffs' Response at 11-14.

With respect to the United States' assertion in the SOI that only "true" facility charges should be paid, the simple truth is that the regulations unambiguously define Facility Charges as "the charge, either inpatient or outpatient, made by a hospital or other institutional provider to cover the overhead costs of providing the service.  These costs include building costs, *i.e.*,

---

[5] Defendant further obfuscates the issue by failing to acknowledge the United States' concession that TRICARE can pay a facility charge in addition to CMAC.  *See* SOI p. 3.

depreciation and interest; staffing costs; drugs and supplies; and overhead costs, i.e., utilities, housekeeping, maintenance, etc." 32 C.F.R. § 199.2(b).  If TRICARE desired to limit the definition of Facility Charges to some concept of "true facility charges," it would have done so. To the contrary, TRICARE adopted at a very broad definition that includes not only the hospital's direct, but also its indirect, costs incurred in providing the delineated service.  As illustrated in Plaintiffs' Response, all of these Facilities Charges are captured on the UB-92, Box 47 and have been properly submitted on the Subject Claims.  *See* Plaintiffs' Response at 11-14.

Consequently, despite Defendant's desire to portray the underlying issue as requiring expertise only TRICARE can provide, the issue is addressed in a single, unambiguous regulation that dictates that Plaintiffs be paid, as billed, their Facility Charges for the Subject Claims for which they have appropriately billed on UB-92s.  This issue only requires only the application of the law to the facts, an analysis that is well within the province of this Court.

## CONCLUSION

For all of the foregoing reasons and the reasons set forth in Plaintiffs' prior briefing on Defendant's Motion to Dismiss, Plaintiffs respectfully renew their request that the Court deny in its entirety Defendant's Motion to Dismiss.

| | |
|---|---|
| Dated: October 26, 2007 | **DUANE MORRIS LLP** |
| | |
| | /s/  Matt Neiderman |
| *OF COUNSEL* | Matt Neiderman (Del. Bar No. 4018) |
| John J. Soroko | DUANE MORRIS LLP |
| Seth A. Goldberg | 1100 N. Market St., Suite 1200 |
| DUANE MORRIS LLP | Wilmington, Delaware 19801 |
| 30 South 17th St. | 302.657.4900 |
| Philadelphia, PA 19103 | 302.657.4901 *fax* |
| 215.979.1000 | mneiderman@duanemorris.com |
| | |
| Michael R. Gottfried | Gregory A. Brodek |
| Patricia R. Rich | DUANE MORRIS LLP |
| DUANE MORRIS LLP | 88 Hammond Street, Suite 500 |
| 470 Atlantic Avenue, Suite 500 | Bangor, ME 04401 |
| Boston, MA 02210 | 207.262.5440 |
| 857.488.4290 | 207.262.5401 *fax* |
| 857.488.4201 *fax* | |

*Attorneys for Plaintiffs Lakewood Health System
and Northwest Medical Center, for themselves and
on behalf of all other similarly situated class members*

## **CERTIFICATE OF SERVICE**

I, Matt Neiderman, hereby certify that on October 26, 2007, I caused a copy of the foregoing document to be served upon the following counsel of record via e-filing:

>Katherine J. Neikirk, Esq.
>Morris James LLP
>500 Delaware Avenue, Suite 1500
>Wilmington, Delaware  19899

>/s/ Matt Neiderman
>Matt Neiderman  (Del. I.D. No. 4018)

11