IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| NORTHERN MICHIGAN HOSPITALS, INC., and GIFFORD MEDICAL CENTER, INC., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 07-039 GMS |
| HEALTH NET FEDERAL SERVICES, LLC (f/k/a HEALTH NET FEDERAL SERVICES, INC.), | ) ) ) ) | |
| Defendant. | ) ) ) | |
| LAKEWOOD HEALTH SYSTEM and NORTHWEST MEDICAL CENTER, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 07-069 GMS |
| TRIWEST HEALTHCARE ALLIANCE CORP., | ) ) ) | |
| Defendant. | ) ) ) | |

## MEMORANDUM

## I.    INTRODUCTION

On January 19, 2007, two hospitals, Northern Michigan Hospitals, Inc., ("Northern Michigan") and Gifford Medical Center, Inc., ("Gifford Medical") filed the above-captioned putative class action against Health Net Services, LLC ("Health Net"). (C.A. No. 07-039, D.I. 1 (Compl.); D.I. 3 (Am. Compl.).) Health Net is a private contractor that underwrites health care services relating to TRICARE, a federal health care program for the armed services. On February 7, 2007, two other hospitals, Lakewood Health System ("Lakewood") and Northwest

Medical Center ("Northwest Medical"), filed the second above-captioned putative class action against TriWest Healthcare Alliance Corp. ("TriWest"), a lso a private contractor that underwrites health care services relating to TRICARE. (C.A. No. 07-069, D.I. 1 (Compl.).) In each action, the hospitals allege that the private contractor breached an implied-in-fact contract and was unjustly enriched when the contractor failed to reimburse the hospitals for certain charges according to TRICARE regulations. Now before the court are the private contractors' motions to dismiss for lack of subject-matter jurisdiction, for failure to join a necessary and indispensable party, and for failure to state a claim upon which relief can be granted. (Northern Michigan D.I. 17; Lakewood D.I. 11.)[1]  For the following reasons, the court will grant Health Net's and TriWest's motions.

## II.    BACKGROUND

### A.    CHAMPUS and TRICARE

In 1967, the United States Department of Defense (the "Defense Department") established CHAMPUS, a health care program for retired armed forces members and their dependents.[2] *See* 10 U.S.C. § 1071; *see also* 32 C.F.R. § 199.3 (designating beneficiaries). The Defense Department administered CHAMPUS using claims processors, called "fiscal intermediaries," to process health care services claims under the CHAMPUS program. The contracts between fiscal intermediaries and the Defense Department indemnified the fiscal intermediaries against claims arising from their performance of duties under the CHAMPUS contract. The indemnif ication provision identif ied the United States, rather than the fiscal

---

[1] Because these two actions are closely related, the court will dispose of the mctions in a single opinion. The court will cite to related filings in the two actions as (Northern Michigan D.I. ___; Lakewood D.I. ___), the first citation corresponding to C.A. No. 07-039 and the second to C.A. No. 07-069.

[2] CHAMPUS stands for "Civilian Health and Medical Program of the Uniformed Services."

intermediary, as the real party in interest in any civil lawsuit arising out of disbursement of funds under CHAMPUS.

In 1995, the Defense Department established TRICARE, a managed health care program covering the same beneficiaries as CHAMPUS.  (The court will refer to CHAMPUS and TRICARE collectively as TRICARE.)  The TRICARE Management Activity, a government entity formerly known as the Office of CHAMPUS, manages and administers the TRICARE program.

**B.    Regional Contracts with Managed Care Support Contractors**

As part of its management responsibilities, the TRICARE Management Activity selects and contracts with managed care support contractors ("MCS contractors") to financially underwrite and otherwise manage the provision of health care services to TRICARE beneficiaries.  Thus, on January 23, 1996, upon TRICARE's implementation, the Defense Department and the TRICARE Management Activity entered into seven contracts with seven MCS contractors, including Health Net and TriWest, to manage twelve defined TRICARE regions across the United States ("Regional Contracts").  In 2002, the TRICARE Management Activity consolidated the TRICARE program into three larger regions, each managed by one MCS contractor.  Both Health Net and TriWest competed for and were each awarded a Regional Contract for one of the newly defined regions.  Thus, in 2003, Health Net became the MCS contractor for the North Region, signing a Regional Contract with a cumulative potential value of approximately $2.2 billion over six years, and began providing health care services in June or July 2004.  TriWest signed a similar contract in 2003 for the West Region worth approximately $10 billion and began providing health care services soon thereafter.  These Regional Contracts between the TRICARE Management Activity and the MCS contractors lacked the indemnity provisions contained in the earlier fiscal-intermediaries contracts.

3

## C.    The MCS Contractors and the Hospitals

As MCS contractors, Health Net and TriWest were responsible for establishing regional networks of health care providers ("Providers") to provide health care services to TRICARE beneficiaries.  Providers can be institutions, such as hospitals, or non-institutional providers, such as doctors, and fall into various categories.  "Network Providers" are Providers with whom an MCS contractor forms a network agreement setting rates of reimbursement.  "Non-Network Providers" are Providers that do not enter into these network agreements.  Some Non-Network Providers choose to participate in the TRICARE system by providing health care to TRICARE beneficiaries in exchange for reassignment of benefits from those beneficiaries.  These are called "Non-Network Participating Providers."[3]  *See* 32 C.F.R. § 199.6.  The plaintiffs in these two actions are all hospitals that are Non-Network Participating Providers ("Non-Network Participating Hospitals").  TRICARE regulations govern how a Non-Network Participating Hospital submits claims to the MCS contractor for reimbursement based on the reassigned benefits.

TRICARE regulations also govern the amount of reimbursement to which the Non-Network Participating Hospitals are entitled.  Specifically, the TRICARE Management Activity has promulgated regulations setting the CHAMPUS maximum allowable charges ("CMACs") for ten categories of outpatient services provided by hospitals.  32 C.F.R. § 199.14(a)(5)(i)-(x).  TRICARE regulations do not set a CMAC for an additional category called "facility charges," however:

> Facility charges. TRICARE payments for hospital outpatient facility

---

[3] Those Non-Network Providers who bill the TRICARE beneficiaries directly, rather than "participating" in the TRICARE program by accepting assignment of benefits from the TRICARE beneficiaries, are called "Non-Network Non-Participating Providers."

charges that would include the overhead costs of providing the outpatient service would be paid as billed. For the definition of facility charge, see § 199.2(b).[4]

*Id.* at § 199.14(a)(5)(xi). Thus, rather than being reimbursed according a preset maximum amount, facility charges are "paid as billed." *Id.*

The TRICARE Management Activity has also established an extensive appeal and rehearing procedure for disputes between MCS contractors and Providers who have submitted claims for payment. *See* 32 C.F.R. § 199.10; TRICARE Operations Manual, Ops. Man. Ch. 13 (Northern Michigan D.I. 19 at A33-A61; Lakewood D.I. 12 at A19-A52). The appeals process begins with a determination by the MCS contractor. At the next level, a TRICARE Management Activity hearing officer reviews the MCS contractor's initial finding. The final level of review consists of appealing the hearing officer's decision to the TRICARE Management Activity Director, who can adopt or reject the hearing officer's decision, or refer the issue to the Assistant Secretary of Defense.

### D.    The Litigation

On January 19, 2007, Northern Michigan and Gifford Medical filed their complaint in this action against Health Net, claiming that Health Net had violated an implied-in-fact contract with the hospitals by failing to reimburse them for their claimed facility charges in violation of TRICARE regulations. (Northern Michigan D.I. 1; D.I. 3.) Lakewood and Northwest Medical followed suit on February 7, 2007, against TriWest. (Lakewood D.I. 1.) On March 15 and 16, 2007, respectively, Health Net and TriWest moved to dismiss on various grounds. (Northern

---

[4] "The term 'facility charge' means the charge, either inpatient or outpatient, made by a hospital or other institutional provider to cover the overhead costs of providing the service. These costs would include building costs, i.e. depreciation and interest; staffing costs; drugs and supplies; and overhead costs, i.e., utilities, housekeeping, maintenance, etc." 32 C.F.R. § 199.2(b).

Michigan D.I. 17; Lakewood D.I. 11.) On August 31, 2007, the United States filed a Statement of Interest pursuant to 28 U.S.C. § 517 addressing the actions and the MCS contractors' motions. (Northern Michigan D.I. 28; Lakewood D.I. 22 ("Statement of Interest").) The parties submitted supplemental briefing in response. On April 2, 2008, the court held a hearing on the motions and stayed the action pending the issuance of this opinion.

## III.    STANDARD OF REVIEW

Pursuant to Rule 12(b)(1), the court should dismiss if it lacks subject-matter jurisdiction over the complaint. Fed. R. Civ. P. 12(b)(1). Challenges to subject-matter jurisdiction under 12(b)(1) may be facial or factual in form: facial attacks contest the sufficiency of the pleadings, while factual attacks contest the existence of subject-matter jurisdiction in fact. *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). For a facial attack, the court must consider the complaint's allegations as true and draw all reasonable inferences in the plaintiff's favor. *Id.* Conversely, for a factual attack, the trial court does not presume those allegations to be true, and is free to weigh evidence relating to jurisdiction to satisfy itself as to the existence of its power to hear the case. *Id.*; *United States ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir. 2007).

Rule 12(b)(7) permits a defendant to move for dismissal of a complaint for "failure to join a party under Rule 19," that is, for failure to join a necessary and indispensable party. Fed. R. Civ. P. 12(b)(7); *see* Fed. R. Civ. P. 19. If a necessary party cannot be joined, the court must determine whether, "in equity and good conscience," the action should proceed or be dismissed. Fed. R. Civ. P. 19(b).

Rule 12(b)(6) permits a defendant to move for dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To state a claim, the

6

complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), thus "giv[ing] the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007) (internal citations omitted). The court must accept all factual allegations in a complaint as true and construe them in the light most favorable to plaintiff. *Erickson v. Pardus,* 127 S. Ct. 2197, 2200 (2007); *Christopher v. Harbury,* 536 U.S. 403, 406 (2002). But the court need not accept as true legal conclusions couched as allegations of fact. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). The motion may be granted only if the complaint, despite its factual allegations being taken as true, fails to "raise a right to relief above the speculative level." *Twombly*, 127 S. Ct. at 1965; *Phillips v. County of Allegheny*, 515 F.3d 224, 232-34 (3d Cir. 2008).

## IV.    DISCUSSION

### A.    TRICARE Does Not Preempt the Hospitals' Claims.

TriWest moves for dismissal under Rule 12(b)(1), arguing that this court lacks subject-matter jurisdiction over the hospitals' claims because TRICARE expressly preempts the hospitals' state law claims. (Lakewood D.I. 12.) TRICARE does contain a preemption provision. 10 U.S.C. § 1103. As the hospitals point out, however, the provision only preempts certain state and local laws from applying to "any contract entered into pursuant to this chapter *by the Secretary of Defense or the administering Secretaries. . .*" *Id.* (emphasis added). In other words, such preemption applies only to the Regional Contracts between MCS contractors and the Government. *See* 32 C.F.R. § 199.17(a)(7)(ii) (TRICARE preempts state and local laws "in connection with TRICARE regional contracts."). On its face, therefore, TRICARE's preemption provision does not apply to the dispute before the court.

Nonetheless, TriWest argues that TRICARE also preempts contracts between an MCS contractor and another private party because those contracts, although not with the United States, "*relat[e] to* health insurance, prepaid health plans, or other health care delivery or financing methods." 10 U.S.C. § 1103 (emphasis added). But TriWest's interpretation overstates the bounds of TRICARE preemption. *See N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655 (1995) (cautioning against overbroad interpretation of "relating to" language in preemption context); 10 U.S.C. § 1103 (TRICARE preempts State and local laws from applying to contracts entered into by the Government). Furthermore, TriWest's reliance on ERISA and Railway Labor Act ("RLA") cases to support its overbroad preemption claims is misplaced because ERISA and RLA regimes, unlike TRICARE, provide for exclusive remedial schemes. 10 U.S.C. § 1103; *cf. Ingersoll-Rand Co. v McClendon*, 498 U.S. 133, 142 (1990) (wrongful discharge action preempted by ERISA's remedial scheme); *Caparo v. United Parcel Service Co.*, 993 F.2d 328 (3d Cir. 1993) (pilot's state law claims preempted by RLA remedial scheme). Simply put, these two actions arise from contracts between private parties, namely, the hospitals and the MCS contractors, over certain charges for services rendered. As such, TRICARE's preemption provision, which applies to contracts between the Government and private parties, does not bar the hospitals' claims.[5]

## B.    The United States Is Not the Real Party in Interest.

Health Net and TriWest also argue that the court should dismiss the hospitals' claims pursuant to Rule 12(b)(1) because the hospitals have not sued the real party in interest, the United States. *See* Fed. R. Civ. P. 17. And if the hospitals had done so, Health Net and TriWest argue, their claims could only be brought in the United States Court of Federal Claims. The

---

[5] The court notes that the Government, in its Statement of Interest, did not assert that TRICARE preempts the hospitals' state law claims for breach of contract and unjust enrichment.

8

United States is the real party in interest if "the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting, or to compel it to act." *Pennhurst State Sch. & Hospital v. Halderman*, 465 U.S. 89, 102 n.11 (1984).

The United States Court of Appeals for the Federal Circuit recently addressed whether, in the TRICARE context, the United States was the real party in interest in a breach of contract claim brought by Network Provider hospitals against an MCS contractor. *Bd. of Trustees of Bay Med. Ctr. et al. v. Humana Military Healthcare Servs., Inc. et al.*, 447 F.3d 1370 (Fed. Cir. 2006) ("*Bay Medical*"). In *Bay Medical*, the hospitals had also brought declaratory judgment claims directly against the Defense Department and the TRICARE Management Activity, among others. Nonetheless, the Federal Circuit rejected the contractor's argument that the United States was the real party in interest with respect to the breach of contract claim. *Id.* at 1374-76. Because the claim was against the MCS contractor based on a private agreement between the MCS contractor and the hospitals, and because the United States had not indemnified the MCS contractor against liability, the Federal Circuit concluded that "the proper defendant for the Hospitals' contract claims is [the MCS contractor], not the government." *Id.* at 1375.

The court finds the reasoning in *Bay Medical* persuasive. Here, like *Bay Medical*, the hospitals bring claims against MCS contractors based on private agreements between private parties. There is no privity of contract between the hospitals and the Government. In addition, the MCS contractors' potential liability for breaching these agreements is not directly chargeable to the Government.[6] *Cf. Bay Medical*, 447 F.3d at 1375-76; *Baptist Physician Hosp. Org., Inc. v.*

---

[6] In contrast to the asserted contracts here, the cases cited by the MCS contractors on this issue involved fiscal-intermediary contracts containing indemnification provisions. *E.g.*, *Vanderberg v. Carter*, 523 F. Supp. 279, 285 (N.D. Ga. 1981), *aff'd without opinion*, 691 F.2d 510 (11th Cir. 1982).

*Humana Military Healthcare Servs.*, 368 F.3d 894, 901 (6th Cir. 2004) (in TRICARE context, MCS contractor's liability for its breach of contract with provider not directly chargeable to the Treasury); (Statement of Interest at 18 (MCS contractors alone liable for any potential judgment).)   Nor has the United States asserted its interest in this case.  *Cf. Hofmann v. Hammack*, 82 F. Supp. 2d 898, 899 (N.D. Ill. 2000) (in CHAMPUS case against fiscal intermediary, United States asserted it was real party in interest).  As such, the court finds that the United States is not the real party in interest in this case.  Like in *Bay Medical*, the proper defendants for the hospitals' contract claims are the MCS contractors.

## C.    The United States Is Not a Necessary and Indispensable Party.

Next, Health Net and TriWest contend that the court should dismiss the hospitals' claims for failure to join the United States, which the MCS contractors argue is a necessary and indispensable party to the litigation. Fed. R. Civ. P. 12(b)(7); Fed. R. Civ. P. 19; *Angst v. Royal Maccabees Life Ins. Co.*, 77 F.3d 701, 705 (3d Cir. 1996). Under Rule 19(a), the joinder of a party is required or "necessary" if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1).

The United States is not a necessary party in this case. Contrary to the MCS contractors' assertions, complete relief can be accorded among them and the hospitals: if the hospitals prevail in their claims, they may recover fully from the MCS contractors, the hospitals' alleged

10

contractual counterparties. *See* Fed. R. Civ. P. 19(a). Moreover, resolving these actions would not impair or impede the United States' ability to protect its interests relating to TRICARE, since the United States would not be bound by this court's interpretations of the private contracts at issue. Indeed, the United States has explicitly disclaimed a desire to be a party; surely, if its interests were at stake, it would have said so. (Statement of Interest at 12); *cf. Gardiner v. Virgin Islands*, 145 F.3d 635, 641 (3d Cir. 1998) (United States' disinclination to become a party "strongly suggest[s] that its interests will not be impeded if the suit goes forward without it."). Finally, resolving the suit between the current parties would not risk exposing the MCS contractors to "double, multiple, or otherwise inconsistent obligations." Fed. R. Civ. P. 19(a)(1). If the hospitals prevail, Health Net's and TriWest's obligations to hospitals under the implied contracts with the hospitals would not be inherently inconsistent with their obligations to the United States under their separate TRICARE Regional Contracts. Therefore, the court concludes the United States is not a party whose joinder is required under Rule 19(a). Accordingly, the court need not address whether the United States is an "indispensable" party under Rule 19(b) and will deny the MCS contractors' motions for dismissal for failure to join a necessary and indispensable party. *Gen. Refractories Co. v. First State Ins. Co.*, 500 F.3d 306, 312-14 (3d Cir. 2007).

### D.     The Hospitals Have Failed to Exhaust Their Administrative Remedies.

Health Net and TriWest also argue that the court should dismiss the hospitals' claims because the hospitals have failed to exhaust their administrative remedies. Generally, parties must exhaust available administrative remedies before seeking relief from the federal courts. *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992). The hospitals respond that they cannot pursue their claims administratively because their claims are not appealable under the TRICARE

11

regime. The hospitals further argue that, even if their claims were appealable, TRICARE does

not require them to exhaust their administrative remedies before seeking relief from the courts.

Finally, because administrative exhaustion in this case would be futile, inefficient, and

inadequate, the hospitals contend, the court should not require exhaustion, either.

      1.    *The Hospitals' Claims Are Administratively Appealable.*

     First, the hospitals argue that no administrative remedies are available because their

claims cannot be appealed through the TRICARE administrative appeals process. TRICARE

regulations define an "appealable issue" as:

> Disputed questions of fact which, if resolved in favor of the appealing
> party, would result in the authorization of CHAMPUS benefits, or
> approval as an authorized provider in accordance with this part. An
> appealable issue does not exist if no facts are in dispute, if no CHAMPUS
> benefits would be payable, or if there is no authorized provider, regardless
> of the resolution of any disputed facts. See § 199.10 for additional
> information concerning the determination of "appealable issue" under this
> part.

32 C.F.R. § 192.2. Under § 199.10, certain issues are non-appealable:

> (i)    A dispute regarding a requirement of the law or regulation.
> (ii)   The amount of the CHAMPUS-determined allowable cost or
> charge, since the methodology for determining allowable costs or
> charges is established by this part. . . .

32 C.F.R. § 192.10(a)(6). The hospitals argue that their claims are not appealable because the

dispute over whether the MCS contractors must pay them facility charges beyond the CMAC is a

"dispute regarding a requirement of the . . . regulation." *Id.*; *id.* at § 192.2; *id.* at §

199.14(a)(5)(xi) (facility charges).

12

But the Government, in its Statement of Interest, has rejected the hospitals' characterization of the dispute as non-appealable. (Statement of Interest at 14-17.) According to the Government, the hospitals' claims themselves, pleaded as breach of implied-in-fact contract and unjust enrichment, could not have been brought in the TRICARE appeal process because the claims, couched in those terms, are contract issues between private parties. The real issue, whether TRICARE regulations and policies entitle the hospitals to be paid "as billed" for the claimed facility charges, is according to the Government one that the hospitals can raise through the TRICARE administrative appeal process. The court accords the Government's interpretation of its own regulations, specifically with respect to what is appealable through administrative remedial procedures, substantial deference. *Your Home Visiting Nurse Servs. v. Shalala*, 525 U.S. 449, 453 (1999); *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994) (Courts "must give substantial deference to an agency's interpretation of its own regulations" - - all the more so when "the regulation concerns a complex and highly technical regulatory program.").

Nor is the Government's interpretation – that the hospitals could in fact appeal their claims through TRICARE's review process – plainly erroneous or inconsistent with TRICARE regulations. There is no dispute that facility charges, as defined under TRICARE regulations, are paid "as billed" under 32 C.F.R. § 199(a)(5). The dispute is thus not over the requirement of the regulation. Instead, the dispute is over whether the hospitals' claimed charges qualify for reimbursement as facility charges. Moreover, as the Government points out, if a Provider's entitlement to reimbursement for a given charge were a non-appealable issue, all disputes over claim amounts would be non-appealable – thus circumventing the administrative appeal process entirely. As such, the court finds that hospitals can bring their claims through the TRICARE appeals procedure.

2.    *TRICARE Does Not Require Administrative Exhaustion.*

Thus, administrative remedies are available to the hospitals.  But does the TRICARE regime require that the hospitals pursue them before bringing suit in federal court?  "Where Congress specifically mandates, exhaustion is required."  *McCarthy v. Madigan*, 503 U.S. at 144. "But where Congress has not clearly required exhaustion, sound judicial discretion governs."  *Id.* Here, Congress has not clearly required exhaustion.  *See* 10 U.S.C. § 1079; 32 C.F.R. § 199.10; (*cf.* Statement of Interest at 14 ("Plaintiffs . . . *can* take advantage of the TRICARE appeals process. . . .") (emphasis added)); *contrast, e.g.*, *Ghana v. Holland*, 226 F.3d 175, 177 (3d Cir. 2000).  So it is within the court's discretion whether to require the hospitals to exhaust their administrative remedies before bringing the current suit.  *McCarthy v. Madigan*, 503 U.S. at 144.

3.    *The Court Will Exercise Its Discretion To Require Administrative Exhaustion.*

The TRICARE administrative appeal process is available to the hospitals.  Further, exhaustion is not clearly required by the TRICARE regime.  So the question is whether the court should exercise its discretion to require administrative exhaustion.  *McCarthy v. Madigan*, 503 U.S. at 144-46; *Cerro Metal Products v. Marshall*, 620 F.2d 964, 970-71 (3d Cir. 1980) (purposes of judicially created exhaustion doctrine).

Each of these two actions boils down to a dispute over unpaid claims.  Since TRICARE regulations specifically govern the claims' validity, this dispute calls for a straightforward application of those regulations to the disputed claims.  (Northern Michigan D.I. 3; Lakewood D.I. 1); 32 C.F.R. § 199.2(b) (defining "facility charge"); *id.* at § 199.14(a)(5) (payments due for certain outpatient services).  Accordingly, requiring exhaustion would allow the agency to apply its special regulatory expertise to the dispute.  *Cf. McCarthy v. Madigan*, 503 U.S. at 145. Institutional interests, as reflected in the Statement of Interest of the United States, also favor

14

requiring exhaustion. (*See* Statement of Interest at 15-17 (hospitals' claims "can and should be raised through the TRICARE administrative appeal process").)

Additionally, exhaustion would not be futile. As discussed above, whether the hospitals are entitled to facility charges as billed under TRICARE regulations is an administratively appealable issue. And if the MCS contractors deny all of the claims during the initial level of review, the hospitals can appeal that determination to the TRICARE Management Activity. *See* 32 C.F.R. § 199.10.

Requiring exhaustion would also aid judicial efficiency in this case. Should the process fail to resolve the hospitals' dispute, exhausting the administrative process would produce a factual record and the agency's position for later judicial review. In addition, the hospitals have not demonstrated that the TRICARE administrative appeal process would be so burdensome as to weigh against requiring exhaustion in this case; the same thousands of claims at issue in the administrative appeal process would also be at issue in this litigation.

The cases cited by the hospitals do not change this analysis. While the courts in *Bay Medical* and *Baptist Hospital* did not require administrative exhaustion, those cases involved disputed contractual terms distinct from TRICARE regulations. *Bay Medical*, 447 F.3d at 1372-74; *Baptist Hospital*, 481 F.3d at 340-344 (MCS contractor and hospitals negotiated payment methodologies apart from TRICARE regulations). These decisions do not address whether the court should require administrative exhaustion when hospitals such as the plaintiffs in this case seek reimbursement "strictly in accordance with the regulations that govern TRICARE," (Northern Michigan D.I. 3 at 7; Lakewood D.I. 3 at 7), rather than separate contractual terms negotiated between the contractor and the hospitals providing for alternative payment methodologies. *E.g.*, *Baptist Hospital*, 481 F.3d at 340-344. While the Third Circuit did not

15

require exhaustion in *Nickeo v. Virgin Islands Telephone Corp.*, that case involved a starkly different regulatory scheme. *Nickeo v. Virgin Islands Telephone Corp.*, 42 F.3d 804 (3d Cir. 1994). There, the Court of Appeals declined, in a footnote, to require administrative exhaustion after finding that the statute's plain language envisioned the availability of both administrative and judicial remedies. *Id.* at 807-09, 808 n.3. Such is not the case here.

As an exercise of its discretion, therefore, the court will require the hospitals to exhaust their available administrative remedies.[7]  Accordingly, the court will dismiss the hospitals' claims without prejudice. *Cf. Hofmann v. Hammack*, 82 F. Supp. 2d 898, 900 (N.D. Ill. 2000) (requiring exhaustion of administrative remedies, even though not mandated by CHAMPUS statute, where plaintiff brought tort and contract claims against CHAMPUS fiscal intermediary).

### E.    The Court Need Not Address Whether The Plaintiffs Have Stated Claims Upon Which Relief Can Be Granted.

Because the court finds that the hospitals are required to exhaust their administrative remedies, the court will not address the merits of the hospitals' substantive claims for breach of contract and unjust enrichment at this time. *Wilson v. MVM, Inc.*, 475 F.3d 166, 173 (3d Cir. 2007).

For the reasons stated above, the court will grant Health Net's and TriWest's motions to dismiss.

Dated: May _30_, 2008

CHIEF, UNITED STATES DISTRICT JUDGE

---

[7] While requiring exhaustion in these actions, the court is not referring the matter to the TRICARE Management Activity under the doctrine of primary jurisdiction because the meaning of the regulations here can be determined from their texts. *See Bus. Edge Group, Inc. v. Champion Mortgage Co.*, 519 F 3d 150, 154 (3d Cir. 2008).

16

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NORTHERN MICHIGAN HOSPITALS, INC., and GIFFORD MEDICAL CENTER, INC., ) ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) | Civil Action No. 07-039 GMS |
| HEALTH NET FEDERAL SERVICES, LLC (f/k/a HEALTH NET FEDERAL SERVICES, INC.), ) ) ) ) | |
| Defendant. ) ) | |
| LAKEWOOD HEALTH SYSTEM and NORTHWEST MEDICAL CENTER, ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) | Civil Action No. 07-069 GMS |
| TRIWEST HEALTHCARE ALLIANCE CORP., ) ) ) | |
| Defendant. ) ) | |

## ORDER

For the reasons stated in the court's Memorandum of this same date, IT IS HEREBY
ORDERED that:

1. The motion to dismiss filed by Health Net Federal Services, LLC, in C.A. No. 07-039

    (D.I. 17) is GRANTED;

2. The First Amended Complaint in C.A. No. 07-039 (D.I. 3) shall be DISMISSED

    without prejudice;

3. The motion to dismiss filed by TriWest Healthcare Alliance Corp. in C.A. No. 07-069

(D.I. 11) is GRANTED; and

4. The Complaint in C.A. No. 07-069 (D.I. 1) shall be DISMISSED without prejudice.

Dated: May 30, 2008

CHIEF, UNITED STATES DISTRICT JUDGE